CARROLL.

MOREY & a., *Ex'rs*, v. SOHIER & a., *Ap'ts.*

When it appears to have been the intention of a testator that all after acquired property should pass by his will, a conveyance of all the estate previously devised, by a trust deed containing a power of revocation which is subsequently exercised and the title revested in the testator, does not operate as a revocation of the will; and upon the revesting of the title in the testator the estate is subject to the will, and the interest of the devisees exists as if no conveyance had been made.

The probate of a will may not be barred by the testator's conveyance leaving no property on which the will can operate ; and it may be immaterial whether the conveyance was made before or after the will.

Whether an appellant has such an interest in the estate as entitles him to appeal from a decree allowing the probate of a will, is ordinarily a question for the court.

ISSUES, upon an appeal from a decree of the judge of probate allowing the will of Dr. S. A. Bemis, executed December 25, 1880.

The first issue joined is, that the appellants are interested as legatees under a former will, dated April 26, 1858, and codicils which have been filed in the probate court, but not proved.

April 26, 1858, Dr. Bemis executed a will, by which he gave all his property, subject to a charge of $200 a year for the life of his brother Henry, to the appellant Sohier, his heirs and assigns, " in the full trust and confidence that he will so manage, dispose of and use the same, or any and every part thereof as I may hereafter when so disposed order and direct him to do by any letter, codicil, or direction in writing which I may make hereafter."

By a codicil executed September 20, 1877, he gave to the other appellant, C. V. Bemis, $1,000. By a codicil executed August 19, 1879, he gave to C. V. Bemis an additional legacy of $9,000, and made Sohier his residuary legatee.

August 5, 1880, by his deed, duly executed, delivered to and accepted by the grantee, Dr. Bemis conveyed all his real estate and (except as hereinafter stated) all his personal property, of the value, in the aggregate, of about $60,000, to Sohier, his heirs and assigns, subject to reservations as follows : " Reserving to myself the right to so much of the granted premises and the income accruing therefrom and the proceeds of the same if sold as I shall from time to time require for my use or enjoyment, and also reserving to myself the power to revoke these presents by notice in writ-

ing under seal to said Sohier, his heirs or representatives, of my intention so to do, signed in the presence of two disinterested witnesses and acknowlédged before any justice of the peace," and upon condition that at his decease Sohier should pay his debts, funeral expenses, the cost of a proper monument, and certain sums to various persons, including $1,000 to C. V. Bemis, amounting in all to about $13,000. At the date of the deed the real estate was in the charge and the personal property in possession of Sohier, as attorney for Dr. Bemis. After the deed it remained in his charge and possession, was managed by him, and the income paid to Dr. Bemis as before, until the revocation of the deed and power.

By the deed Dr. Bemis intended to convey and did convey all his property and rights of property, excepting only a bond given by Morey for his maintenance, the conditions of which were never broken. He executed the deed for the purpose and to the end that all his property being disposed of during his lifetime, there might be no litigation touching its disposition after his decease.

December 23, 1880, Dr. Bemis revoked the deed according to the power of revocation therein contained, and January 28, 1881, revoked Sohier's general power of attorney.

Upon cross-examination of the appellee, Osgood, it appeared that Dr. Bemis executed a will December 21, 1880, by which he gave to Sohier $20,000 and to C. V. Bemis $1,000, and that he destroyed this will December 25, 1880, at or immediately before the time when he executed the will now in question.

The appellants, after their closing argument, moved that the first issue be rejected, or if not rejected, that it be amended by striking out that part of it relating to the will of 1858. To this motion the appellees objected generally, and also upon the ground that it was not seasonably made. The court sustained the objection and denied the motion.

*Copeland & Edgerly* and *E. F. Jones* (with whom was *E. D. Sohier*, of Massachusetts), for the appellants; *C. B. Gaffney* and *J. B. Nash* for Sohier; *W. M. Weed* for Bemis.

*Ray, Drew & Carpenter* and *Bingham & Aldrich*, for the appellees. The defendants base their right to contest the last will solely upon the will of 1858, and the codicils thereto. Their standing and right to be heard in court depend wholly upon their right to set up that will. The sole question therefore is, whether the deed of Aug. 5, 1880, from Dr. Bemis to Sohier, operated as a revocation of the will of April 26, 1858. They contended that it had such effect, citing and commenting upon the following authorities among others: *Epps* v. *Dean*, 28 Ga. 533; *Bowen* v. *Johnson*, 6 Ind. 110; *Cave* v. *Holford*, 3 Ves., Jr., 650; *Goodtitle* v. *Otway*, 2 H. Black. 516—*S. C.,* 1 Bos. & P. 576; *Vawser* v. *Jeffrey*, 16 Ves., Jr., 519—*S. C.,* 3 B. & Al. 462; *Briggs* v. *Watt*, 2 Jur. (N. S.) 1041;

*Walker* v. *Armstrong*, 21 Beav. 284—*S. C.*, 8 De G., M. & G. 531; 1 Jar. Wills 148; 1 Redf. Wills 339; 2 Greenl. Ev., *s.* 86; *In re Cooper's Est.*, 4 Penn. St. 88; *Walton* v. *Walton*, 7 Johns. Ch. 258, 272; *Graves* v. *Sheldon*, 2 D. Chip. (Vt.) 75; *Blandin* v. *Blandin*, 9 Vt. 210; *Balliet's Appeal*, 14 Penn. St. 451; *Shove* v. *Pincke*, 5 T. R. 124; *Beard* v. *Beard*, 3 Atk. 72; 4 Kent Com. 529, 531; *Brydges* v. *Duchess of Chandos*, 2 Ves., Jr., 417; *Hawes* v. *Humphrey*, 9 Pick. 360; *Luther* v. *Kidby*, 8 Vin. Abr. 148—*S. C.*, 3 P. Wms. 170; *Risley* v. *Baltinglass*, T. Raym. 240; *Dowd's Est.*, 58 How. Pr. 107; *Philson* v. *Moore*, 23 Hun 152; *Selden* v. *Pearsall*, 1 N. Y. Leg. Obs. 277; *Barstow* v. *Goodwin*, 2 Bradf. 413; *Herrington* v. *Budd*, 5 Denio 321; *Adams* v. *Winne*, 7 Paige Ch. 97; Roberts (Vt.) Dig. 749, *s.* 18; *Bosley* v. *Bosley*, 14 How. 390; G. L., *c.* 193, *s.* 15; *Gage* v. *Gage*, 12 N. H. 371; *Pollen* v. *Pollen*, 1 Eq. Cas. Abr. 412; *Putbury* v. *Trevilian*, 2 Dyer 143; *Muller* v. *Henry*, U. S. C. C. Cal., May, 1879 p. 464; *Harwell* v. *Lively*, 30 Ga. 315; *Bohanon* v. *Walcot*, 1 How. (Miss.) 336; *Warner* v. *Warner*, 37 Vt. 356; *James* v. *Marvin*, 3 Conn. 576; *Pickens* v. *Davis*, 134 Mass. 252; *State* v. *Crossley*, 69 Ind. 203; *Scott* v. *Fink*, 45 Mich. 241; *Rudisill* v. *Rodes*, 29 Gratt. 147; *Lively* v. *Harwell*, 29 Ga. 509, 515, 516.

CLARK, J. The question in this case is, whether the will of April 26, 1858, was revoked by the writing of August 5, 1880; whether the writing purporting to convey all the real and personal estate to the residuary legatee, afterwards revoked under a power of revocation reserved in it, was an implied revocation of the will.

By the seventh section of "An act for the devising of real estate, the attestation, filing, and recording of wills in certain cases, and the distribution of testate estates," passed July 2, 1822, it was enacted "That no revocation of any will purporting a disposition of real estate, or of real and personal estate, or any clause thereof, shall be allowed unless proved by some other will or codicil, executed with the like formalities, or by some other writing declaring the same, or by cancelling, tearing, obliterating, or otherwise destroying such will by the testator, or by some other person in his presence and with his consent; and no will in writing concerning personal estate shall be revoked or altered by any words or will by word of mouth only, except the same be in the lifetime of the testator committed to writing, and be read to him, and be proved so to be done by three witnesses at least: *Provided*, that nothing in this section contained shall be construed to control or affect any revocation of a will to be implied according to law from any change in the circumstances of the testator, his family, devisees, legatees, or estate, occurring between the time of making the will and the death of the testator." This portion of the act of July 2, 1822, is reënacted in Gen. Laws, *c.* 193, *ss.* 14, 15. In the original act, section fifteen appears as a proviso to what is now section fourteen,—a modification of form

only. The proviso was intended merely to except from the preceding prohibition such revocations as had been established by English decisions on an implication not consistent with the English statute of frauds. "Implied according to law," in the proviso, means implied according to those decisions. What, if any, change in the circumstances of the testator, his family, devisees, legatees, or estate, occurring between the time of making the will and the death of the testator, shall operate as a total or partial revocation of the will, is left to be determined as if the proviso had expressly enacted the rule of those decisions so far as the reason on which the rule was founded is not excluded by New Hampshire legislation; and if the reason on which the rule was founded no longer exists, the proviso does not require its observance or prohibit its abrogation.

The cases of implied or presumptive revocation were few. Marriage and the birth of a child revoked the will of a testator made before the marriage, for the reason that the will, disposing of all the testator's estate, and containing no provision for the wife and child, would entirely exclude them from any share in the estate, except the widow's right of dower. It was conclusively presumed that the testator did not intend to leave his wife and child wholly unprovided for, and it was assumed that there was a tacit condition annexed to the will when it was made that it should not take effect in such a case. Marriage alone revoked the will of a woman, because a married woman at common law had neither the capacity to make nor revoke a will; and so, having no power to dispose of the property bequeathed or devised by the will, or to alter or revoke it, it became divested of its ambulatory character, and was regarded as absolutely revoked by the marriage. These were instances of revocation implied from subsequent changes in the condition and circumstances of the testator and his family.

It was formerly essential to the validity of a devise of freehold lands that the testator should be seized thereof at the making of the will, and that he should continue so seized without interruption until his decease. If, therefore, the testator, subsequently to his will, by deed aliened the lands which he had disposed of by his will, and afterwards acquired a new freehold estate in the same lands, such newly acquired estate did not pass by the devise, which was necessarily void. 1 Jar. Wills 147. The will was regarded in law in the nature of a conveyance of the land devised. It could operate only upon land in which the testator had an interest at the time of the execution of his will, and consequently after acquired real estate could not pass by it. *George* v. *Green*, 13 N. H. 521. When the conveyance, subsequent to the devise, though made for a partial purpose, embraced the entire fee simple, or the whole estate of freehold which was the subject of the devise, the rule under the old law was, that the conveyance, though limited in its purpose, and though it instantly revested the estate in the testator, produced a total revocation of the devise. I Jar. Wills 148.

A conveyance by the devisor subsequent to the devise (except in mortgage or for the purpose of partition), of the estate devised, removes it from the operation of the will, and of necessity operates as an ademption of the subject of the devise, and in effect, as a revocation of the will *pro tanto*. If the alienation is partial, the revocation is partial, and if the alienation is of the entire estate, it is in effect a total revocation of the testamentary disposition of the estate,—not because of any infirmity or want of operative force in the will, but by reason of the withdrawal of the entire estate from its operation. *Marston* v. *Marston* 17 N. H. 503, 506. And as formerly no after acquired real estate could pass by a will, a conveyance of the entire estate was regarded as an absolute revocation of the testamentary disposition of property.

In England, since 1837, by the statute of 1 Vict., c. 26, no will is revoked by any presumption of an intention on the ground of a change of circumstances, and every will is construed to speak and take effect as if it had been executed immediately before the death of the testator, unless a contrary intention appears by the will. So in this state, many of the conditions upon which the doctrine of implied revocation was formerly based in England no longer exist. Now by statute the widow and children of a testator, not named or provided for in his will, receive the same share of his estate as if he had died intestate; and there is no longer any necessity for the application of the old rule of implied revocation by subsequent marriage and the birth of a child. *Hoitt* v. *Hoitt, ante* 475. A will was not revoked formerly by marriage and the birth of issue, if the revocation would produce no benefit to them, or if provision had been made for them in the will, or by previous settlement. The statutory provisions for the widow and children not named or provided for are grounded upon the assumption that the will is not revoked by the failure of the testator to make testamentary provision for them. If the omission to provide for the widow and children operated to revoke the will, the statute would be inoperative. A woman's ante-nuptial will is not revoked by her marriage. *Fellows* v. *Allen*, 60 N. H. 439. The incapacity of a married woman to make a will being removed by statute, no reason remains why her will made before marriage should be revoked by mere force of the marriage contract. "Any estate, right, or interest in any real property acquired by the testator after making his will, shall pass thereby, if such shall clearly appear to have been his intention." Rev. St., c. 156, s. 2; G. L., c. 193, s. 2. Under this alteration of the common law *(Loveren* v. *Lamprey*, 22 N. H. 434), any form of words, showing the intent of the testator to devise all the estate which he should own at the time of his decease, passes all his property, real and personal, whether owned at the time of making the will, or acquired afterwards. If a testator, after executing his will, makes a conveyance of land specifically devised, and subsequently becoming revested with the title, is the owner of the same land at his decease, it passes by the will as if there had been no alienation.

But at common law such conveyance operated as an absolute revocation of the will as to the estate conveyed, although the testator died seized of the identical estate which he possessed at the making of the will.

The law applicable to the testamentary disposition of property has been so far modified as to raise the question whether a case can now arise of a total revocation by implication of law, when there is any estate upon which the will can operate. *Hoitt* v. *Hoitt, ante* 475. And a case is possible where a will may operate to control the appointment of an administrator or guardian, even if there is no estate to be transmitted by it. A will may be a mere appointment under a power. 1 Jar. Wills 29. And in various cases a will inoperative in other respects is an effective appointment of an executor, who settles the estate as under intestacy. 1 Williams Ex'rs 458 ; 1 Jar. Wills 28. Under laws of 1879, *c.* 49, one might make a will for the sole purpose, and to the extent only, of appointing an executor and exempting him from giving the ordinary bond. It has been held that the statute,—12 Car. II, *c.* 24, *s.* 8,— authorizing the testamentary appointment of guardians for minors by their fathers, has been adopted in this state. *Balch* v. *Smith,* 12 N. H. 437. If it is still in force here, with or without such modifications as would conform it to our legal situation (*Hammond* v. *Corbett* 50 N. H. 501, *Prime* v. *Foote, ante* 52), a will containing such an appointment might not be wholly revoked by a conveyance of all the testator's property in trust for his children.

If the writing called a deed, dated August 5, 1880, had been an ordinary absolute conveyance of all the grantor's property, leaving the grantor without any estate, it would not prevent the probate of the will subsequently made. The question whether a will is entitled to probate does not depend upon the question whether, at the time of the testator's death, or at any previous or subsequent time, there was any property which it could dispose of. As the execution and delivery of a deed may be proved in a real action before the question of its legal effect is adjudicated, so a will may be proved in the probate court without a trial of the question whether it will be inoperative for want of title in the testator; and on the question of probate, it is not material, as matter of law, whether a deed purporting to convey all the testator's property was made before or after the will. If the will is made first, a devisee may have it proved to enable him to contest the deed in a writ of entry; and if he is the grantee in the deed, he may have the will proved for the purpose of enabling him to claim under it in case the deed should be held, on any ground of law or fact, to be invalid. The appellant Sohier, as grantee in the paper of August 5, 1880, and as legatee under the first and second wills, has an interest that authorizes him to contest the third until it appears that all the instruments under which he claims were invalid, or duly revoked by Dr. Bemis in a competent state of mind.

Whether they were revoked by the transactions of December 21, 23, and 25 is a question to be tried, and is apparently the same in substance as the issue on the validity of the last will. The paper dated August 5, 1880, does not preclude him from maintaining his interest as a party on that issue. If it was an absolute deed of all Dr. Bemis's property, it would not bar the probate of a previous or subsequent will. Not being attested by three witnesses, it was not a valid will, nor a valid written revocation. If it was wholly void, as Sohier contends, because, being neither a duly executed will nor a duly executed revocation of a will, it was a mere attempt to make a will with two witnesses, in violation of the statute of wills (*French* v. *French*, 3 N. H. 234, 261, *Shed* v. *Shed*, 3 N. H. 432, *Underwood* v. *Campbell*, 14 N. H. 393, *Bell* v. *Scammon*, 15 N. H. 381, 394, *Rollins* v. *Riley*, 44 N. H. 9, *Bartlett* v. *Remington*, 59 N. H. 364, *Towle* v. *Wood*, 60 N. H. 434, *Shurtleff* v. *Francis*, 118 Mass. 154, *Basket* v. *Hassell*, 107 U. S. 602, 614, 615, 1 Jarm. Wills, 18–26), it is not anything from which a revocation can be implied. If it had any effect as a conveyance, Sohier has a right to be heard on the question whether it was fairly revoked.

The case is before us on a motion to reject the first issue joined, which is whether the appellants are interested as legatees under a former will dated April 26, 1858, and codicils, which have been filed in the probate court, but not proved. This is not an issue involved in any of the reasons of appeal touching the validity of the will in controversy. It is a preliminary question involving the appellants' right of appeal; and upon the facts stated in the reserved case, it should be decided in favor of the appellants.

*Case discharged.*

CARPENTER and BINGHAM, JJ., did not sit: the others concurred.