Cheshire County Probate Court
No. 82-511

*In re* ESTATE OF STELLA P. SNOW

October 26, 1983

*R. J. Shortlidge, Jr.,* of Keene, by brief and orally, for the plaintiffs.

*Faulkner, Plaut, Hanna, Zimmerman & Freund,* of Keene (*Joseph W. Worthen, II,* on the brief and orally), for the defendants.

BATCHELDER, J. The plaintiffs are appealing a ruling by the Probate Court (*Espiefs,* J.) denying the petition of Eugene Snow for appointment as administrator of Stella Snow's estate and granting the petition of Chester and Edmund Kingsman for appointment as executors under Stella Snow's will. The probate court found that Stella Snow's 1979 revocation of her 1974 will was a nullity because she lacked testamentary capacity at the time of revocation. It also ruled that Stella Snow's 1974 will was not revoked by implication of law. We affirm.

Stella Snow executed a will on October 17, 1974, in which she named her six children but left her entire estate in equal shares to her two sons, Chester and Edmund Kingsman, the defendants. She recited in the will that she did so because of the financial assistance

she had received from her two eldest sons and not because of any lack of affection for her other four children (who are the plaintiffs in this case, and are Stella Snow's children from a subsequent marriage). The will nominated Chester and Edmund Kingsman as executors.

In 1976 Stella Snow's mental health began to decline. She entered the Bert Anne Nursing Home in Chesterfield, New Hampshire, on February 13, 1978, where she remained until October 5, 1979. In 1978 guardianship proceedings were instituted in the probate court. On November 16, 1978, the court appointed Elizabeth Kingsman temporary guardian; and, five days later, Stella Snow was adjudged mentally incompetent. Elizabeth Kingsman was appointed Stella Snow's permanent guardian on August 23, 1979, but this court subsequently declared that appointment a nullity, *In re Snow Estate*, 120 N.H. 590, 419 A.2d 1095 (1980), because the procedures leading to the appointment did not conform with the requirements of RSA chapter 464-A, which became effective August 22, 1979. A new permanent guardian was not appointed until June 8, 1981.

On October 9, 1979, Stella Snow executed a revocation of her 1974 will, with all the requisite formalities. RSA 551:13. After Stella Snow's death on April 7, 1982, Eugene Snow filed a petition for appointment as administrator of his mother's estate. A month later, Edmund and Chester Kingsman filed a petition for appointment as executors of their mother's will. After a hearing, the probate court found that Stella Snow had retained her right to make or revoke a will while under guardianship, but that at the time of revocation she was not under guardianship and lacked the necessary testamentary capacity. Accordingly, the court held that the revocation of Stella Snow's will was a nullity and appointed Edmund and Chester Kingsman as executors of the will.

Eugene Snow petitioned for reconsideration, raising the new issue of whether, due to changed circumstances, Stella Snow's will was revoked by implication of law. RSA 551:14. The probate court found no revocation by implication and let its previous order stand. This appeal followed.

The crux of the question raised by the plaintiffs' initial argument is whether the probate court had the power to find that Stella Snow lacked the testamentary capacity to revoke her will, when, in an earlier guardianship proceeding, the court did not expressly take Stella Snow's right to make or revoke a will away from her. We find that, under the facts in this case, the probate court did have such power.

In order to clarify the issue, we find it necessary to reiterate some of the important facts. The probate court appointed Elizabeth

Kingsman temporary guardian of Stella Snow upon a petition filed under RSA chapter 464. That appointment was effective from November 16, 1978, until September 17, 1979. The November 21, 1978, inquisition finding Stella Snow mentally incompetent was also conducted under the provisions of RSA chapter 464. The petition requesting Elizabeth Kingsman's appointment as permanent guardian was filed pursuant to RSA chapter 464, and the full evidentiary hearing on the petition, held on August 22, 1979, was conducted in full compliance with that statute. At the hearing, the probate court made no specific findings about the capacity of Stella Snow to make or revoke a will, nor was it required to do so under RSA chapter 464. On August 23, 1979, the probate court appointed Elizabeth Kingsman as the permanent guardian of Stella Snow.

Meanwhile, RSA chapter 464-A (Supp. 1979), which superseded RSA chapter 464, took effect on August 22, 1979. RSA chapter 464-A (Supp. 1979) was designed to "provide procedural and substantive safeguards for civil liberties and property rights" of individuals under guardianship. RSA 464-A:1 (Supp. 1979). It includes the requirement that the probate court enumerate which legal rights, including the right to make or revoke a will, a ward is incapable of exercising. RSA 464-A:9, IV (Supp. 1979). The plaintiffs argue that if the probate court appoints a guardian but does not explicitly deny the ward the right to make or revoke a will under RSA 464-A:9, IV, a trial court has no power, after the death of that ward, to find that she lacked testamentary capacity. We do not need to reach this issue, however, because Stella Snow was not under a RSA chapter 464-A guardianship when she revoked her will.

■ This court, in *In re Snow Estate*, 120 N.H. 590, 419 A.2d 1095 (1980), found that RSA chapter 464-A (Supp. 1979) applied to all cases commenced but not decided as of August 22, 1979. Accordingly, the appointment of Elizabeth Kingsman as permanent guardian was declared a nullity. Elizabeth Kingsman's appointment as temporary guardian of Stella Snow expired on September 17, 1979. The probate court did not appoint a permanent guardian for Stella Snow under RSA chapter 464-A (Supp. 1979) until June 8, 1981. Therefore, our conclusion must be that on October 9, 1979, when Stella Snow revoked her will, she was not under *any* guardianship. Accordingly, the probate court had the power to adjudicate the testamentary capacity of Stella Snow. RSA 551:1; RSA 551:2; *see Poplin v. Hawke*, 8 N.H. 124 (1835). Its finding that Stella Snow lacked testamentary capacity when she revoked her will was not appealed.

The second issue on appeal is whether the doctrine of revocation

by implication of law, RSA 551:14, should be applied to the case at hand. The plaintiffs argue that the circumstance of an individual being declared mentally incompetent is sufficient to give rise to the probate court's discretionary power to declare that individual's will revoked by implication of law. We disagree.

RSA 551:14 must be read in conjunction with RSA 551:13, which provides that a will shall not be revoked unless by a valid writing executed with the requisite formalities, or by some physical act of the testator. RSA 551:14 excepts from RSA 551:13 revocation of a will implied in law due to a change in the circumstances of the testator or his family occurring between the time of making the will and the death of the testator. In *Hoitt v. Hoitt*, 63 N.H. 475, 495, 3 A. 604, 613–14 (1885), we held that G.L. 193:15, now RSA 551:14, was essentially declarative of English law. That law restricted the application of the doctrine of revocation implied by law to a few exceptional cases, and did not establish the general rule that "revocation might be shown by any change of circumstances affording satisfactory evidence of the testator's revoking intention." *Id.* at 495, 3 A. at 614.

Under English law, the courts automatically revoked, by implication of law, a prenuptial will of a man after his marriage and the birth of a child, and a prenuptial will of a woman after her marriage. *In the Matter of Rice*, 118 N.H. 528, 531, 390 A.2d 1146, 1148 (1978); *Morey v. Sohier*, 63 N.H. 507, 510, 3 A. 636, 638 (1885). While this court may not be limited to those specific circumstances, *see In the Matter of Rice supra*, we decline to expand this doctrine to include, as a matter of law, the automatic revocation of the will of an individual whose subsequent revocation of that will has been declared a nullity by the probate court upon a finding that the individual lacked testamentary capacity at the time of such revocation.

The plaintiffs ask that we find that the incompetency of the testator triggers the application of RSA 551:14, thereby allowing the court to examine other changed circumstances which could then, in the court's discretion, give rise to an implied in law revocation. However, the application of the doctrine of implied revocation is not discretionary. Because the facts of this case do not bring it within the terms of RSA 551:14, requiring automatic revocation, the probate court was correct in approving Stella Snow's 1974 will.

*Affirmed.*

SOUTER, J., did not sit; the others concurred.