[No. 13491.   Department One. — February 10, 1891.]

# JOHN F. CORKER, APPELLANT, *v.* AURELIA J. CORKER, RESPONDENT.

WILL — REVOCATION — HUSBAND AND WIFE — "MARRIAGE CONTRACT" — SETTLEMENT UPON SEPARATION — CONSTRUCTION OF CODE. — The term "marriage contract," as used in section 1299 of the Civil Code, concerning the revocation of a will by marriage of the testator, unless provision is made for the wife by marriage contract, etc., refers to and designates only such a contract or settlement between husband and wife as expressly purports in its terms to be a marriage contract, and to make provision for the wife in lieu of a testamentary provision for her, and does not include a post-nuptial agreement which merely purports to settle property rights between them in view of a separation.

ID. — CONTEST OF WILL — BURDEN OF PROOF. — When an antenuptial will is offered for probate, the surviving wife need only show the subsequent marriage, in order to defeat the probate; and the burden is then cast upon the proponent of the will, if he relies upon a marriage contract to prevent a revocation of the will, to prove the contract and show by its terms that it purports to make provision for the wife, and that such provision was intended to take the place of a testamentary provision for her.

ID. — EVIDENCE — MARRIAGE CONTRACT — INTENTION OF PARTIES. — Upon the contest of an antenuptial will by a surviving wife, no evidence can be adduced by the proponent of the will respecting what is claimed to be a marriage contract, other than the instrument itself, with proof of its execution if denied; and if the instrument does not purport upon its face to be a marriage contract within the meaning of the code, the court cannot receive any other evidence that such was the intention of the parties.

ID. — JURISDICTION OF PROBATE COURT. — Where an antenuptial will is shown to have been revoked by marriage, and no marriage contract is proved, the power of the probate court is limited to denying probate to the will, and determining who has a right to administer upon the estate; and it has no jurisdiction to inquire into any facts affecting the consideration, validity, or operation of a deed of separation between the testator and his wife.

APPEAL — IMMATERIAL FINDINGS — REVIEW OF EVIDENCE. — Where the court makes immaterial findings, it will not be inquired upon appeal whether the evidence is or is not sufficient to justify them; but the judgment will be affirmed, if there is sufficient evidence to sustain the material findings which support the judgment.

APPEAL from a judgment of the Superior Court of Los Angeles County, and from an order denying a new trial.

.   The facts are stated in the opinion of the court.

*Smith & Northrop*, for Appellant.

*E. Baxter*, and *Wells, Guthrie & Lee*, for Respondent.

HARRISON, J. — John R. Corker died in the county of Los Angeles September 12, 1889, leaving a writing purporting to be his last will, which was executed December 12, 1883; and on September 18, 1889, John F. Corker, who was named therein as executor, presented the same to the superior court of said county, together with his petition for its probate, and the issuance to him of letters testamentary thereon. To this petition the respondent, Aurelia J. Corker, filed written opposition, alleging that the said will had been revoked by reason of the marriage of the decedent to her, subsequent to its execution, and that no provision had been made for her, either in the will or by marriage contract. To this opposition the petitioner answered, alleging that after such marriage, and prior to the 9th of October, 1888, the decedent and contestant mutually agreed to separate and live apart, and "in pursuance of said agreement, the said John R. Corker and Aurelia J. Corker, on said ninth day of October, 1888, entered into a marriage contract or agreement, in writing," under their hands and seals, which was duly acknowledged and recorded in the office of the county recorder of Los Angeles County; and that in consideration of the covenants in said marriage contract contained, "and as settlement and division of all their property rights, the said John R. Corker, on said ninth day of October, 1888, executed to Aurelia a deed" for certain real estate in Los Angeles County (describing the same), of which she thereupon took the possession, and that they then separated, and never after resumed marriage relations.

The following is the instrument referred to in his answer as a marriage contract or agreement:—

"It is agreed by and between Aurelia J. Corker and John R. Corker, husband and wife, of Los Angeles city

and county, state of California, as follows: The said Aurelia J. Corker, in consideration of the said John R. Corker conveying to her, by good and sufficient deed this day executed contemporaneous herewith, the lands therein described, does hereby release and absolve him, the said John R. Corker, from in any manner contributing to her support, as his wife or otherwise, during their and each of their natural lives; that she releases and conveys to him all right, claim, or interest that she may have in or to all community property which has been or shall hereafter be acquired by her said husband, all right or claim to alimony or attorney's fees, costs or support, in any manner, during litigation or otherwise; and for the same consideration (in case of proceeding for the dissosolution of the marriage between them is instituted by either party hereto) is hereby released and the said John R. Corker is absolved and discharged therefrom; and for the same consideration she releases all right, claim, or interest that she may have by law or otherwise in or to any property, real or personal, that he may have at the time of his death, or to which he may then be entitled, and all right, claim, and interest in or to his estate after he is dead.

"In consideration of the foregoing, the said John R. Corker has conveyed, and does hereby again convey, sell, and assign and set over to the said Aurelia J. Corker, as her own separate property, the lands and premises described in said deed of even date herewith, to have, hold, and convey the same, without let or hindrance from him, collect, receive, have, and enjoy the rents and profits therefrom, and discharges, releases, and absolves her and her property now or hereafter acquired by her from any, all, and every right, claim, or interest which he may have therein because the same being in law community property.

"And it is further mutually agreed between the parties hereto that they will each support and maintain

themselves, sell, convey, purchase, mortgage, and do all business regardless of the other, the same as if they were unmarried, the intention being to hereby settle, now and forever, all property rights and interests, and relieve each other of all obligations growing out of or imposed by their marital relations, as far as they can under the law, and they hereby agree that they will immediately separate and live apart from each other. As there are no children born of said marriage, and none have been adopted by them, there are none to be provided for by the parties hereto.

"In witness whereof, the parties to this agreement, have hereunto set their hands and seals this ninth day of October, 1888.          "AURELIA J. CORKER. [SEAL.]
          "JOHN R. CORKER.      [SEAL.]"

At the hearing upon these issues, the contestant, for the purpose of defeating the effect of the instrument of October 9, 1888, offered evidence to show that the property conveyed to her in consideration of its execution was her separate property, and that consequently the agreement made no "provision" for her, and was without consideration.

The court, in its decision, took this view of the transaction, and found that the property so conveyed to her had, for a long time prior thereto, been her separate property; that there was no other consideration for the execution of the agreement; that the agreement itself was not fair and reasonable in its terms; that the release therein by the wife was not founded upon sufficient consideration; and that no provision had been made for her by the decedent, either by marriage contract or in the will, and thereupon denied probate to the will. A motion for a new trial was made by the proponent, upon the ground that the evidence was insufficient to justify the findings of the court that the property so conveyed to the wife was her separate property, or that the agreement of October 9, 1888, was without any other con-

sideration, or was not fair and reasonable in its terms, and, also, its finding that no provision had been made for her by marriage contract. The motion for a new trial was denied, and from this order the proponent has appealed to this court.

Section 1299 of the Civil Code is as follows: "If, after making a will, the testator marries, and the wife survives the testator, the will is revoked, unless provision has been made for her by marriage contract, or unless she is provided for in the will, or in such way mentioned therein as to show an intention not to make such provision; and no other evidence to rebut the presumption of revocation must be received."

The term "marriage contract," as found in this section, is not defined in the code. The section itself is nearly identical with section 12 of the act concerning wills, passed April 10, 1850. At that time the legislature had before it the bill defining the rights of husband and wife, which became a statute April 17, 1850 (Stats. 1850, p. 254), and which contained a chapter headed "Marriage Contracts." An examination of the sections in that chapter will show that the term, as used therein, refers entirely to antenuptial contracts; and it is fairly presumable that the "marriage contract" referred to in section 12 of the act concerning wills (now section 1299 of the Civil Code) is the one referred to in the act of April 17, 1850, defining the rights of husband and wife. When the Civil Code was adopted, this term in the chapter on "Husband and Wife" was changed to "marriage settlement" and "contract for marriage settlement" (Civ. Code, secs. 177–181); and in consideration of the provisions of section 5 of the Civil Code, we must presume that the "marriage settlement" found in these sections is the same as the "marriage contract" found in the act of April 17, 1850, and consequently the same as the "marriage contract" referred to in section 1299 of the Civil Code.

Stewart, in his treatise on Marriage and Divorce, section 32, says: "Contracts or conveyances in contemplation of marriage, whereby property is promised to or settled on either or both of the parties, by either or both of the parties, or by a third party, and contracts whereby either or each of the parties releases or modifies, or agrees to release or modify, his or her property rights which would otherwise arise from the marriage, are called marriage settlements or contracts." And in the same section he also says: "Marriage settlements made after marriage, unless in pursuance of antenuptial articles or agreements, are simply contracts between husband and wife."

It is unnecessary, however, to decide in this case whether the marriage contract referred to in section 1299 is limited to antenuptial contracts, or whether a post-nuptial agreement between husband and wife may be so framed as to constititute such a marriage contract, inasmuch as the instrument here is a post-nuptial agreement, which does not in terms purport to be a marriage contract.

Section 1299 unequivocally declares that, except in the instances therein specified, "if, after making a will, the testator marries, and the wife survives the testator, the will is revoked." When the will is offered for probate, the surviving wife, in order to defeat its probate, need only show that she was married to the testator subsequent to its execution. The burden is then cast upon the proponent to show the existence of one of the conditions which except it from this rule. If the wife is not mentioned in the will, he must show that "provision has been made for her" by "marriage contract." And in order to emphasize the rule that the instrument itself is the only mode of proof, the section further declares: "And no other evidence to rebut the presumption of revocation must be received."

The plain meaning of this clause is, that unless the

instrument shows upon its face that it is a "marriage contract" within the meaning of the section, and that by it "provision" has been made for the wife, and that such provision was intended to take the place of testamentary provision for her, the will is revoked.   The wife is not called upon to introduce any further proof, and the proponent is limited in his proof to the marriage contract itself.   Nor can the court receive any evidence for the purpose of showing the intention of the parties to the instrument, or their relative conditions of wealth at the time it was executed, or the effect which will result from its enforcement.   If the instrument is a "marriage contract," and purports to make "provision" for the wife, the court cannot inquire into the character or extent or reasonableness of such "provision" any more than it can in other contracts between parties who are *sui juris*.   If the parties are themselves satisfied with the "provision," it is not for the court to substitute its judgment for theirs as to its sufficiency.   So long as the execution of the contract is not impeached, it is as binding upon the parties as would be any other contract.

If the instrument does not on its face purport to make provision for the wife in lieu of testamentary provision, the court cannot receive evidence of any character for the purpose of showing that such was the intention of the parties.   The provision of the statute forbidding any other evidence than the contract itself is peculiarly appropriate to all post-nuptial agreements. As the husband and wife can enter into any engagement or transaction with each other respecting property which either might if unmarried (Civ. Code, sec. 158), such an agreement made by them ought not to receive a construction that does not appear upon its face to have been its object, or which will operate a different result from that which is fairly deducible from its terms.   If the husband and wife have, each of them, separate property, and they choose to deal with each other respecting it,

either by way of exchange or purchase and sale, such dealing should not be made the pretext of asserting some right which does not appear from the terms of the instrument to have been in their minds. If the husband, during the marriage, makes to his wife a conveyance of certain property, such conveyance ought to be regarded as a gift rather than a "provision" for her which would prevent his antenuptial will from being revoked by his marriage.

The instrument executed between Corker and his wife partakes more of the nature of a deed of separation than of a marriage contract. It does not purport to make any "provision" for the wife, nor is there anything in its terms that indicates that either of the parties had in mind the subject of a will, or that the instrument was executed in lieu of making testamentary provision for her. It refers to another instrument executed to her by her husband, in consideration of which she releases him from certain marital obligations. The instrument itself does not contain any of the elements of a "marriage contract."

As soon as this instrument was presented to the court, and the court saw from an inspection of it that it was not a marriage contract, its power under the proceedings before it was limited to denying probate to the will. After it had been shown that there was no marriage contract in which provision had been made for the wife, the court was only required to determine the person who had the right to administer upon the estate. Whether rights of property passed under the contract, or whether it could be enforced, or whether the widow has any right in the estate of her deceased husband, are questions that may arise when distribution of the estate shall be sought, but could not then be investigated. Sitting at that time merely as a court of probate, it had no jurisdiction to inquire into the sufficiency of the consideration for which the deed to the wife was executed, or for the re-

lease then executed by her to her husband, or whether the property described in the deed to her was at the time of its execution her separate property, or whether the contract itself was fair or reasonable. Its findings and determinations upon these subjects were without authority, and binding upon no one. These questions could be presented and determined only in a tribunal having jurisdiction to inquire into them, and where the parties who would be affected thereby would have an opportunity to be heard.

The court seems to have reached this conclusion, since in its judgment it merely declared that the will was revoked, and therefore denied it probate.

Whether the evidence before the court was sufficient to justify its findings upon the other propositions is immaterial. If there was sufficient evidence to justify its finding of the ultimate fact, that no provision had been made for the wife by any marriage contract, that decision or finding is not impaired by the fact that there was not sufficient evidence to justify the immaterial findings which it made; and its order denying a new trial was correct, and should be affirmed.

GAROUTTE, J., and PATERSON, J., concurred.