[No. 7825. Decided April 12, 1909.]

*In the Matter of the Estate of* ALFRED ADLER, *Deceased.*
LOUIS ADLER *et al., Appellants,* v. HANNAH ADLER,
*Respondent.*[1]

WILLS—IMPLIED REVOCATION—SUBSEQUENT MARRIAGE OF TESTATOR
—PROVISION IN WILL FOR FUTURE WIFE—STATUTES—CONSTRUCTION.
Under Bal. Code, § 4598, providing that marriage revokes a former
will of the testator if the wife be living at the time of his death,
unless she shall be provided for in the will or in such way men-
tioned as to show an intention not to make such provision, marriage
does not revoke a former will making a bequest in favor of the person
who became the wife of the testator, where there was nothing in
the will to show a counter intent; revocation of wills by implication
not being favored.

Appeal from a judgment of the superior court for King
county, Morris, J., entered November 23, 1908, in probate,
granting letters of administration, upon denying a petition
for the probate of a will, after a hearing on the merits before
the court without a jury.  Reversed.

*Godman & Embree,* for appellants.

*McClure & McClure (Edwin C. Ewing,* of counsel), for
respondent.

CHADWICK, J.—On June 30, 1905, Alfred Adler, then a
resident of the state of New York, made his last will and testa-
ment.  The will disposed of his entire estate, estimated in
value to be about $250,000.  He died September 16, 1907,
in New York, leaving property in that state, and in King
county, Washington.  Among other bequests made by the
testator, was the following:

"Seventh:—I give and bequeath to my friend, Hannah
Harttung, at present residing at No. One Hundred Four
West Eighty-fifth street, in the Borough of Manhattan,
City and State of New York, the sum of Thirty-five Thou-

[1]Reported in 100 Pac. 1019.

sand Dollars ($35,000), free and clear of any inheritance or transfer tax thereon, absolutely, which legacy I direct shall be paid to her within four months after my death. It is my wish that the said Hannah Harttung shall consult with and accept the advice of my friend, Jacob M. Frank, in the investment of this sum of money so that the same may be safely and properly invested, and I urge her to use the income and not the principal, unless the use of some of the principal should become absolutely necessary, but my wishes and advice herein expressed are not mandatory and shall not in any manner affect the absolute character of the bequest herein made to her. In case of the death of the said Hannah Harttung before me, said bequest shall lapse, and in that event, and not otherwise, I give to her sister, Dorris Harttung, the sum of ten thousand dollars ($10,000), free and clear of any inheritance or transfer tax or charge thereof. I direct my executors in either event to pay the transfer or inheritance taxes above referred to in addition to the bequest in this paragraph made."

A few hours before his demise, Alfred Adler married Hannah Harttung. The will was thereafter admitted to probate by order of the surrogate's court of New York county, New York; and pending proceedings therein, Hannah Adler, the respondent, was paid a legacy of $35,000, and as the widow of the testator has received her dower interest in the real property of the testator in the state of New York. On June 4, 1908, respondent filed her petition in the superior court of King county, praying that letters of administration upon the estate of her deceased husband be issued to some disinterested person, resident in the state of Washington. In her petition she set up the making of the will theretofore admitted to probate in the state of New York, the marriage of the testator to the respondent subsequent to its execution, the consequent revocation of the will by the marriage and the intestacy of the deceased as to his estate in the state of Washington. Thereafter appellant Benjamin Lichtenberg filed a petition in the same court, setting up the will and its probate in the state of New York, and praying that it be admitted to probate, and that letters of administration

with the will annexed be issued to him as the nominee of the executors of the will. This petition was afterwards supplemented by the petition of Louis Adler and Max Adler, brothers of the deceased, praying that the petition of appellant Lichtenberg be granted. Issues were drawn between the parties, and after trial the court rendered its decision, holding that the legacy given by the deceased to Hannah Harttung, now Hannah Adler, was given to her because of friendship existing between them, and was not given in contemplation of marriage; that the will was, by virtue of the marriage, revoked as to all property in the state of Washington. The prayer of respondent's petition was granted, and E. E. Morris was appointed a general administrator of the estate. From this order Benjamin Lichtenberg, Louis Adler, and Max Adler have appealed.

Counsel have prepared elaborate briefs in which they have traced the law on the subject of implied revocation of wills from the civil law down through the common law and through the various judicial interpretations put upon statutes as we find them construed in the text of reported cases. In the case of *In re Petridge's Will*, 47 Wash. 77, 91 Pac. 634, will be found a recitation of the history of legislation upon the subject of revocation of wills by marriage, as it has occurred in this state. In that case we held that the will of a woman who had married after executing a will was revoked by the marriage, and the husband by reason of his heirship under the general rules of descent, was entitled to letters of administration and to his distributive share of the estate. In that case the will was made without mention of the person who thereafter became the husband of the deceased. The statute, Bal. Code, § 4598 (P. C. § 2344), upon which this case depends, was construed to the extent of holding that the word "testator" should be read "testatrix," in the event that a will had been executed by a woman under like circumstances as provided in the statute.

It was the rule at common law that, if one having sufficient

capacity made his will and thereafter married, the will was not revoked unless issue was born to the union. This rule was based on the theory that no reason existed for revocation as to the wife, for she was fully protected by her right of dower; whereas children born of the marriage took as heirs, and would be protected in the rights incident to heirship, unless the intent of the testator to exclude them was clearly shown by the will itself. With the abolition of dower and tenancy by the courtesy in many of the states of the Union, the reason of the rule failed and courts began to apply the reason rather than the letter of the law; and a line of authority, which may not improperly be called the common law in America, holding that the wife having no dower interest and being under the statute of descent an heir to the husband, came within the rule of the common law which revoked the will as to issue, and for the like reasons the will was held to be revoked by marriage. Precedent to any judicial interpretation, some states have, by legislative enactment, anticipated the possibility of confusion, and enacted laws fixing conditions the concurrence of which operates as a revocation of the will.

Many decisions based upon the common law, or upon statutes declaring, modifying, and enlarging the common law rule, have been cited. From them may be gleaned the following principles: (1) That the will is revoked by subsequent marriage; (2) that the will is revoked in the event of subsequent marriage and issue born; (3) that the will is revoked in the event of subsequent marriage unless it clearly appears from the will itself that the intention of the testator was otherwise; (4) that the will is revoked unless provision be made for the wife; (5) that the will is revoked unless it appears on the face of the will that the provision for the wife was in fact made in contemplation of marriage. These principles have been applied in one way or another in the following cases: *Brush v. Wilkins,* 4 Johns. Ch. 506; *Morgan v. Ireland,* 1 Idaho 786; *Brown v. Scherrer,* 5 Colo. App.

255, 38 Pac. 427; *Edward's Appeal*, 47 Pa. St. 144; *Walker v. Hall*, 34 Pa. St. 483; *Deupree v. Deupree*, 45 Ga. 415; *Corker v. Corker*, 87 Cal. 643, 25 Pac. 922; *Byrd v. Surles*, 77 N. C. 435; *McAnnulty v. McAnnulty*, 120 Ill. 26, 11 N. E. 397, 60 Am. Rep. 552; *In re Toepfer's Estate*, 12 N. M. 372, 78 Pac. 53, 67 L. R. A. 315; *In re Larsen's Estate*, 18 S. D. 335, 100 N. W. 738; *Tyler v. Tyler*, 19 Ill. 151; *Ingersoll v. Hopkins*, 170 Mass. 401, 49 N. E. 623, 40 L. R. A. 191; *Duryea v. Duryea*, 85 Ill. 41; *American Board of Com'rs. v. Nelson*, 72 Ill. 564; *Ellis v. Darden*, 86 Ga. 368, 12 S. E. 652, 11 L. R. A. 51.

In a review of the cases, we find none based on a statute like our own with the fact concurring as we have it in the case at bar. Bal. Code, § 4598 (P. C. § 2344), is as follows:

"If, after making any will, the testator shall marry and the wife shall be living at the time of the death of the testator, such will shall be deemed revoked, unless provision shall have been made for her by marriage settlement, or unless she be provided for in the will, or in such way mentioned therein as to show an intention not to make such provision, and no other evidence to rebut the presumption of revocation shall be received."

It will be seen by those who are inclined to follow the cases that our statute is a wide departure from the common law as well as from the theories usually advanced to sustain that rule, and that it differs from the statutes of any other state, at least in so far as they have been construed by the courts. As, for instance, the case of *Ingersoll v. Hopkins;* the testator left a legacy to one Mary Alice Peyton, whom he afterwards married, and having died without changing his will, the court held that, inasmuch as there was nothing in the will to indicate that it was made in contemplation of marriage, the will was revoked. The decision could not have been otherwise, for it was controlled by a statutory provision which is as follows:

"The marriage of any person shall act as a revocation of any will made by such person previous to such marriage, un-

less it shall appear from the will itself that the will was made
in contemplation of such marriage;"

a requirement wholly lacking in our statute. It can hardly
be contended—in fact it is not contended—that the words
"marriage settlement," occurring in our law, can be con-
strued as synonymous with, or dependent upon, the same
kind of proof as the words "in contemplation of marriage."

The case next in order of seeming relevancy to our present
inquiry is the case of *Duryea v. Duryea*. In its facts it is
essentially on all fours with the case at bar. The testator
made his will in which he provided for a legacy of $10,000
to one Mary Peters, whom he afterwards married. He died,
leaving property in the state of New York and, also, in the
state of Illinois. His will was admitted to probate in New
York, and after due course of administration in execution
of the will, the legacy was paid to the legatee, then his
widow. In passing, it is well to say that a will is not revoked
under the law of New York by the subsequent marriage of
the testator. An attempt was made to probate the will in
Illinois. This proceeding was challenged by the widow, who
had thereafter remarried, and the court held, following the
older cases of *Tyler v. Tyler*, and *American Board of Com'rs.
v. Nelson*, that the will was revoked in the state of Illinois.
No statute intervened to perplex the judgment of the court
in any of the Illinois cases. The only duty resting upon the
court was to apply the common law rule, having in mind the
changed condition, the abolishment of dower, and the statute
making the wife an heir to the husband. The court held, as
we think justly, as it had held in the *Tyler* case:

"We hold, that marriage under our statute making the
wife heir to the husband and the husband heir to the wife,
where there is no child or descendant of a child, is, in the
absence of facts showing an intention to die testate arising
subsequent to the marriage, a revocation of a will of the
husband, made prior to the marriage, disposing of his entire
estate without making provision in contemplation of the rela-
tions arising out of it."

While the pursuit of this review of the authorities is engaging to the writer, to extend it further would draw this opinion out to inordinate length. We shall therefore pass the remaining cases most relied on by the respondent—*In re Toepfer's Estate, Edward's Appeal, In re Larsen's Estate, Deupree v. Deupree*, and *Ellis v. Darden*—as well as all others hereinbefore referred to as falling within the common law rule, or within that rule as applied by courts to meet the changed rules of descent, or under the ban of a statute declaring a rule in derogation of the common law.

In so far, then, as we have gone, it would seem that we have made no real progress beyond distinguishing the cases upon which respondent has placed her dependence. Like other courts having a situation to meet not contemplated by the common law, but resulting from the duty of the court to give effect to every expression of the legislative will upon the subject, we have to meet, not alone the statute making the heirship of the husband and wife mutual, but also the expression "or unless she be provided for in the will," unaided by the bond "made in contemplation of marriage," or equivalent expression, to tie it to the current of authority. However dissimilar the conditions, the earlier English cases, as well as many of the American cases, are not devoid of phrase or reason to assist us in the true interpretation of the law. The case of *Kenebal v. Scrafton*, 2 East 530, although denied as authority by respondent, bears a peculiar relation to the expression "or unless she be provided for in the will," as found in our statute. The grounds upon which courts have been most inclined to rest the rule of implied revocation of wills is that, because of new moral or testamentary duties arising from a relationship not in contemplation at the time of the execution of the instrument, it will be presumed that the testator had annexed the tacit condition that it should not take effect if a change occurred in his situation that brought with it other objects upon which his bounty should in good conscience be bestowed. To recur to the case of

*Kenebal v. Scrafton*: One who was cohabiting with a woman made a will. In it he settled an annuity of 150 pounds upon her, and made provision for such children as he might thereafter have by her. Subject to these charges, he made another the residuary legatee of his whole estate. He then married the woman and had children by her. No mention or suggestion was made of marriage in the will. Lord Loughborough, to whom the case was first presented, 5 Vesey 633, finding some confusion in the settlement of the question, referred it for opinion to the court of King's Bench; and now, quoting the words of Chancellor Kent in the case of *Brush v. Wilkins*, 4 Johns. Ch. 506:

"The Court of K. B., after great consideration, decided, that the will was not revoked by the subsequent marriage and children, inasmuch as those new objects of duty were contemplated and duly provided for by the will. Lord Ellenborough, in delivering the opinion of the Court, declared the rule to be settled, that marriage and a child *without provision made for the objects of these relations,* operated a revocation of a will of lands; but that the rule only applied in cases where the wife and children were wholly unprovided for, and where there was an entire disposition of the whole estate, to their exclusion and prejudice. He approved of the ground of reason on which the doctrine of implied revocations was put by Lord Kenyon, and which was not a presumed alteration of intention, but a tacit condition annexed to the will when made, that it should not take effect, if there should be a total change in the situation of the testator's family. Here the wife and children were specifically contemplated and provided for, though under a different character and denomination."

The American cases as a rule have adopted the reasoning of Chancellor Kent, whether credited or not. Of the case of *Kenebal v. Scrafton,* counsel says:

"In that case Lord Ellenborough in delivering the opinion of the court, declared the common law of England to be that a will would be revoked by a subsequent marriage and birth of issue, provided there was a total want of provision for the family so newly circumstanced. In that case provision was

by the will directly and distinctly made for the woman and for the children of the testator by her, and the court was apparently of the opinion that, inasmuch as provision was made for her and for the children, the revocation would not occur, although the will did not specifically provide for the marriage which afterward occurred. That this rule was found to work injustice is established by the fact that thirty-five years afterward the Act of I Victoria, Chap. 26, was passed, and by this act the law was changed so that, had the law in the time of Lord Ellenborough been as established by the statute, the will in question in *Kenebal v. Scrafton* would have been adjudged revoked by the marriage;"

a conclusion with which we will not quarrel.

But when counsel asks us to cure the defect, if it may be so called, in our statute, by a judicial decree, as Parliament by legislative expression changed the rule of the common law by providing that, "every will made by a man or woman shall be revoked by his or her marriage" (7 Wm. IV, 1 Vic. par. 28, ch. 26), we think we are asked to go beyond the constitutional limit of our authority. When the legislature has assumed to speak upon a given subject, courts must take its expression as it is, and if it be certain in its terms, there is no reason for speculation as to its reasons, nor warrant for adding anything to meet a given case. The provisions of Bal. Code, § 4598 (P. C. § 2344), are in the disjunctive. If a person shall have made a marriage settlement, or if the wife shall have been provided for, or if an intent not to make such provision is disclosed, the will is deemed revoked. It does not say that the provision must be made in contemplation of marriage. The only question open is whether the person who has become a proper object of the bounty of the testator is provided for. Nor will we take any concern of the amount of the provision. To bring ourselves within one of the several rules to which we have referred, we have no right to read into our statute the words "unless it clearly appears," or "was made in contemplation of marriage."

It is conceded that parol evidence is incompetent to explain the will. This furnishes further reason to sustain our

views. Taking the statute as it is, may we not say, presuming that the testator did not, at the time of executing the will, have in mind the changed condition to be wrought by a subsequent marriage, that, upon the happening of that event, being mindful of his will, he was satisfied with the provision he had made for respondent? Under the common law, and statutes in form different from our own, the law presumes a testator would have made another will; but under our statute the presumption should not follow, for the person in whose behalf the law was written is provided for, and the end of the law is fully accomplished. There is nothing in the will to show a counter intent. To hold otherwise it seems to us would be in effect to say that we should overturn this will because the legatee was not as fully provided for as in our judgment a wife should be, or has not received as much as she would have received under the statutes of descent. If we could do that, we might, in the interest of heirs in a given case, overturn the will because the person provided for had more than enough to meet the presumed duty of the testator. Said Chancellor Kent:

"It would be dangerous, and might lead to loose speculations, to give greater effect than the settled doctrine of the English law has already done, to the occurrence of new domestic duties. Every person is permitted to make his own will, at his discretion; and he may even disinherit his children, if he should be so inclined, whether they deserved, or not, such extreme chastisement. Every material addition to the property of a testator, or alteration in the circumstances of his family, varies his relations and duties, either in kind or degree, and might be made the ground of very plausible and pathetic claims upon the Court for the application of this doctrine of a presumed revocation. Courts would be running the hazard of substituting their will for that of the testator." *Brush v. Wilkins, supra,* page 518.

In thus disposing of this case, we can give effect to another most salutary rule. While we have said that in our judgment the grounds upon which wills are or may be revoked are statutory, it is also the rule that revocation of

wills by implication of law are not favored. The reason for overturning a will must supplant every other consideration. Where wills have been held to be so revoked by implication, it was because of some reason so controlling that the presumption followed that the testator himself, upon the happening of the event, would not have published the document as his will. There is nothing in the will before us, and nothing is suggested in the statute, that would warrant the indulgence of this presumption on our part. Speaking to this subject, the supreme court of Vermont has said:

"The statute of this state respecting revocations of wills and testaments, under which this question must be decided, is a literal transcript of the sixth section of the 29 Charles II. The construction of this clause of the statute, in England, has been that it leaves revocations by conclusion and operation of the law in the same state in which it found them. This construction obviously renders the important provisions of the section, in relation to revocations, altogether nugatory, except as to a particular mode of affecting an express revocation; whereas, the plain sense of the statute is that no revocation, except such as reverts ex necessitate rei, shall be effected otherwise than expressly, and that, too, in one of the modes therein pointed out. I am not prepared to go the length of the English decisions as reported on this subject. I feel bound to construe every constitutional act of the legislature in such manner as to give it full and complete effect. For certainly the constitutional statutes of this state are not to be annulled on the authority of any court. I cannot admit that an alteration in the circumstances of the devisor will, in any case, amount to a revocation in law, or that an intended alteration in his estate will have that effect. It is time that the intention of the testator is to be principally regarded, but that intention is to be inferred from such facts only as the statute authorizes us to notice." *Graves v. Sheldon*, 2 D. Chipman (Vt.) 71, 15 Am. Dec. 653.

Our conclusion then is that the words "or unless she be provided for in the will," being in the disjunctive and in no way qualified by the usual term "in contemplation of marriage," refer to a condition existing at the time of death,

and not necessarily to an intended wife. A person being provided for may, by intermarriage with the testator, bring herself within the operation of the statute. If she be provided for in the will, as she is in the case at bar, she comes within our statute, as under the rules to which we have referred she would have fallen without it. Alfred Adler having made his will, and afterwards married, his wife surviving him, at least one of three things must appear: He must have made a marriage settlement, or she must be provided for in the will, or so mentioned as to indicate his intention not to make such provision. The statute must be construed to read as follows:

"If after making any will the testator shall marry and the wife shall be living at the time of the death of the testator, such will shall be deemed revoked . . . unless she be provided for in the will. . . ."

Hannah Adler is provided for in the will, and is concluded by its terms.

This case is reversed, with directions to the lower court to admit the will to probate, to take an account of the administration, and to direct the settlement of the estate by an administrator with the will annexed, as prayed for in the petition of appellant Lichtenberg.

FULLERTON, GOSE, CROW, and MOUNT, JJ., concur.

MORRIS, PARKER, and DUNBAR, JJ., took no part.