[Civ. No. 3078.   First Appellate District, Division One.—November 14, 1919.]

In the Matter of the Estate of BENNO MEYER, Deceased. JACOB MACOWSKY et al., Executors, etc., Appellants, and MAX MEYER et al., as Legatees; CAMILLE DORIS MEYER, Respondent.

[1] WILLS—SUBSEQUENT MARRIAGE AND BIRTH OF ISSUE—REVOCATION —CONSTRUCTION OF SECTION 1298, CIVIL CODE.—Under section 1298 of the Civil Code, where a person, after making a will, subsequently marries and dies, leaving a child issue of such marriage, surviving him, and no provision is made for such child, either by settlement or in the will, the will is rendered dead as completely as if the decedent had destroyed it by burning, or by any other means known to the law. It is revoked, not by implication, but by positive statutory enactment and thereafter there is no state of facts to which the provisions of section 1306 of the Civil Code can be applied.

[2] ID.—PRETERMITTED HEIRS—SECTION 1306, CIVIL CODE, CONSTRUED. Section 1306 of the Civil Code amounts only to a rule of succession applicable in those cases in which no conjunction of events has served to revoke the will of the testator of surviving issue not provided for as in said section specified.

APPEAL from an order of the Superior Court of the City and County of San Francisco refusing probate of a will.   Thomas F. Graham, Judge.   Affirmed.

The facts are stated in the opinion of the court.

1. Revocation of will by marriage and birth of issue, notes, 80 Am. Dec. 518; 7 Ann. Cas. 786; by birth of issue alone, note, Ann. Cas. 1913D, 1318.

Sufficiency of provision as to after-born child to prevent revocation of will, notes, Ann. Cas. 1913D, 1328; 43 L. R. A. (N. S.) 1195.

Cullinan & Hickey for Appellants.

Louis H. Brownstone for Respondent.

WASTE, P. J.—This is an appeal from an order refusing probate to the last will of Benno Meyer, deceased, which was executed on the fifth day of March, 1917. Three-fourths of the entire estate of the decedent is, by the will, bequeathed and devised to the mother and brothers of the deceased. The remaining one-fourth is disposed of as follows:

"As I am about to be married to Camille Lasky, of the City and County of San Francisco, State of California, and desire to make some provision for her in case of said marriage, I do hereby give, bequeath and devise unto her an undivided one-fourth (¼) of each and all my said estate."

Three days after the will was made the deceased married said Camille Lasky, and, subsequently, a child, Marjorie Catherine Meyer, was born. Both wife and child survive the deceased, who died on, or about, the sixteenth day of January, 1919. The child, Marjorie, is not mentioned in the will, nor provided for by any settlement. When the testament was offered for probate, the surviving wife filed her opposition thereto, claiming the will to have been revoked by the birth of the child to the marriage. This contention was upheld by the lower court.

[1] The sole question presented for determination in the lower court and on this appeal has to do with the construction to be placed on section 1298 of the Civil Code and its application to the facts at bar. That section reads as follows: "If, after having made a will, the testator marries, and has issue of such marriage, born either in his lifetime or after his death, and the wife or issue survives him, the will is revoked, unless provision has been made for such issue by some settlement, or unless such issue are provided for in the will, or in such way mentioned therein as to show an intention not to make such provision; and no other evidence to rebut the presumption of such revocation can be received."

The rule that a will is revoked by the subsequent marriage of the testator, and birth of issue, was borrowed from the civil law, and by degrees rather reluctantly incorporated

into and is now firmly established as part of the common law. (*Swan* v. *Hammond,* 138 Mass. 45, [52 Am. Rep. 255] ; *Warner et ux.* v. *Beach,* 70 Mass. (4 Gray) 162.)   The reason for the rule has been said to rest upon a presumed alteration of intention, on the part of the testator, arising from changed circumstances, new relations, and duties; that is, it is considered that on the birth of a child the situation is so changed that if the will had been made under the altered conditions, it would not have been made as it was. (*Gay* v. *Gay,* 84 Ala. 38, [4 South. 42] ; *Warner* v. *Beach, supra.*)   Other courts have held that the true view, apart from statutory enactments, is that a tacit condition is annexed to the will, to wit, that subsequent marriage and the birth of a child should revoke it.   (*Wheeler* v. *Wheeler,* 1 R. I. 364; *Baldwin* v. *Spriggs,* 65 Md. 373, [5 Atl. 295].)

By appropriate legislation the provision for revocation from change of circumstances of the testator has now become an integral part of the statutory law of many states.   In some jurisdictions, as, for instance, in Massachusetts, the statute, after setting forth the manner in which a will may be revoked, provides that nothing contained in the statute "shall prevent the revocation implied by law from subsequent changes in the condition or circumstances of the testator."   Construing that section, the supreme court of that state said:

"The commissioners in their note to this section say, 'The clause as to implied revocations recognizes and adopts the existing law, as established and understood among us.'   And their further discussion of this subject shows clearly that they had in mind the rule of the common law, that, in case of a man, marriage and the birth of a child, and, in case of a woman, marriage alone, revoked a will previously made.

"We are of the opinion that this provision as to implied revocations, from its language, and the reasons given for its introduction, has substantially the force of an express enactment of the rules of the common law, which we are not at liberty to change." (*Swan* v. *Hammond, supra.*)

In other jurisdictions, California among them, the statute, by positive enactment, provides the only way in which a will may be revoked.   The effect of these provisions is to do away with the doctrine of implied revocation.   (*In re*

*Comassi,* 107 Cal. 1, 5, [28 L. R. A. 414, 40 Pac. 15].)
Section 1292 of the Civil Code declares:

"Except in the cases in this chapter mentioned, no written will, nor any part thereof, can be revoked or altered otherwise than:

"1. By a written will, or other writing of the testator, declaring such revocation or alteration, and executed with the same formalities with which a will should be executed by such testator; or

"2. By being burnt, torn, canceled, obliterated, or destroyed, with the intent and for the purpose of revoking the same, by the testator himself, or by some person in his presence and by his direction."

Section 1298, *supra,* deals with one of "the cases in this chapter mentioned," and section 1299 relates to another. In considering section 1298 and section 1299 of the same code, relating to the effect of the marriage of a testator after making a will, our supreme court said:

"It is the policy of the law that wife and children must be provided for. Therefore the Civil Code declares that where an unmarried person has made a will, and afterward marries, the marriage, whether followed by the birth of issue or not, operates, in case of the survival of wife, or children, if any, as a revocation of the will, unless some specific provision has been made by the will itself, or by a marriage contract for the surviving wife, or by some settlement or provision for any surviving children of the marriage. (Secs. 1298, 1299, *supra.*) The law presumes that the subsequent marriage of a testator has wrought such a change in his condition in life as to cause him to destroy or cancel a previous will; and does not admit of evidence to the contrary unless provision has been made according to law for wife and children who have survived him. (Secs. 1298, 1299, *supra.*)" (*Sanders* v. *Simcich,* 65 Cal. 50, 52, [2 Pac. 741, 742].)

In considering a similar law of the state of Georgia (Code of 1863, sec. 2445), the supreme court of that state said: "The object of the provision is to secure a specific moral influence upon the testamentary act—the moral influence of having before the mind a contingent event so momentous as marriage or the birth of a child, and so deserving of consideration in framing a testamentary scheme." (*Ellis* v.

*Darden,* 86 Ga. 368, 372, [11 L. R. A. 51, 12 S. E. 653].)
The same court at a later period had the same statute under
consideration, and said:

"When, therefore, a person has made a will in this state
and thereafter marries or has a child born to him, the
will stands revoked upon the happening of either contin-
gency, unless it appears that when the will was executed the
testator had in contemplation the event of marriage or the
birth of a child. And the evidence that the testator did
have the event in contemplation must be in the will itself,
taken in connection with the circumstances which existed
at the time the will was executed; and this can be shown
only by means of a provision in the will which appears to
have been made in contemplation of the event. There can
be no question that this is the plain meaning of the statute."
(*Sutton* v. *Hancock,* 115 Ga. 857, 859, [42 S. E. 214, 216].)

We have, perhaps, dwelt more at length in the foregoing
discussion, upon a rule of law so well established, than the
exigencies of the case required. We have done so in order
that the force of appellants' contention, may be better un-
derstood. It is stated by them as follows: "Since section
1298 of the Civil Code codifies a general rule of the chancery
and civil law, that rule, so codified, is subject to the excep-
tions recognized by the English and civil law. One of those
exceptions is that when the pretermitted child would not
gain an advantage by the revocation of the will, under the
rule, the will, in that event, is not revoked."

Appellants take the ground that, under section 1306 of
the Civil Code, the pretermitted child of the decedent Meyer
succeeded to the same portion of the testator's estate as she
will be entitled to take if it shall appear that her father
died intestate, and that, therefore, she will not be benefited
by the revocation of the will. That section is as follows:

"Whenever a testator has a child born after the making
of his will, either in his lifetime or after his death, and dies
leaving such child unprovided for by any settlement, and
neither provided for nor in any way mentioned in his will,
the child succeeds to the same portion of the testator's real
and personal property that he would have succeeded to if
the testator had died intestate. But such succession does
not impair or affect the validity of any sale of property
made by authority of such will in accordance with the pro-

visions of section fifteen hundred and sixty-one of the Code of Civil Procedure.''

That the common-law rule of implied revocation, in the event of a subsequent marriage and birth of issue, did not always apply where revocation would not result in any benefit to the wife and issue, appears to have been sometimes recognized as an exception to its general scope and application. (Jarman on Wills, Bigelow's 6th ed., *p. 111; Page on Wills, p. 322, sec. 283.) The English authorities cited by these text-book writers, however, so far as we have been able to find them, were dealing with cases in which there had not been a testamentary disposition of the entire estate and there remained property out of which the issue could be provided for.

Appellants cite with confidence *Hoitt* v. *Hoitt,* 63 N. H. 475, [56 Am. Rep. 530, 3 Atl. 604], where the court said: ''Inasmuch as the widow and children of a testator, not provided for in a will, are, under our statutes, entitled to the same share of the estate as if he had died intestate, the sole reason upon which the rule was grounded no longer exists, and so the rule itself has become inoperative and obsolete in this jurisdiction.'' This case, however, may be distinguished, as we will presently point out. We find from an examination of this and appellants' other authorities on this point, that the courts were there dealing with the doctrine of implied revocation, something that has been done away with by the enactment of the statutory provisions of our code. (*In re Comassi, supra.*) In one of the cases chiefly relied upon by appellants that distinction is clearly pointed out. Giving *Hoitt* v. *Hoitt, supra,* as its authority, the supreme court of New Hampshire said: ''In this state, many of the conditions upon which the doctrine of implied revocation was formerly based in England no longer exist. Now, by statute, the widow and children of a testator, not named or provided for in his will, receive the same share of his estate as if he had died intestate; and there is no longer any necessity for the application of the old rule of implied revocation by subsequent marriage and the birth of a child.'' Continuing, the court said: ''The statutory provisions for the widow and children not named or provided for are grounded upon the assumption that the will is not revoked by the failure of the testator to make testa-

mentary provision for them. If the omission to provide for the widow and children operated to revoke the will, the statute would be inoperative." (*Morey* v. *Sohier*, 63 N. H. 507, 511, [3 Atl. 636, 639].)

In this last statement, we think, is a complete answer to appellants' contention. When Meyer died, leaving a child surviving him, no provision being made for her by some settlement, or in the will, the contingency provided for by the legislature became operative, and thereby the will of the decedent was rendered "dead, as completely as if he had destroyed it by burning, or by any other means known to the law." (*Sutton* v. *Hancock, supra.*) It was revoked, not by implication, but by positive statutory enactment, and thereafter there was no state of facts to which the provision of section 1306 (*supra*) could be applied. We are not now dealing with a common-law rule, but with a statutory enactment relating to the revocation of wills under certain circumstances. We cannot read into section 1298 any exception which the legislature did not incorporate therein. Therefore, we cannot agree with appellants that section 1306 of the Civil Code makes any such provision for the pretermitted child of the decedent, Meyer, as to take this case out of the application of the statutory enactment found in section 1298 (*supra*). [2] It amounts only to a rule of succession, applicable in those cases in which no conjunction of events has served to revoke the will of the testator of such surviving issue.

The order and judgment of the lower court are affirmed.

Richards, J., and Kerrigan, J., concurred.