[Civ. No. 6412. Second Appellate District, Division Two.—June 7, 1929.]

In the Matter of the Estate of CHARLES RUDOLPH APPENFELDER, Deceased. KATHERINE LOUISE APPENFELDER, Appellant, v. SECURITY TRUST & SAVINGS BANK (a Corporation) et al., Respondents.

Clarke & Bowker and James C. Hollingsworth for Appellant.

Arthur W. Eckman, Melvin T. Dunlavy, Louis Thomsen and Bert P. Woodward for Respondents.

THOMPSON (IRA F.), J.—This is an appeal from an order admitting to probate the last will and testament, together with the codicil thereto, of Charles Rudolph Appenfelder, deceased. The decedent executed his will on August 24, 1924, and on March 2, 1926, made the codicil. By these instruments he bequeathed $2,000 to his former wife (divorced at the time the will was published) and devised to her a life estate in certain real property situate in Glendale, California. Of the remainder over, $\frac{1}{8}$ was given to the appellant, Katherine Louise Appenfelder, described in the will as "my niece" but who at the time was in fact the wife of a nephew of the deceased. The balance of the remainder over was distributed among Emma C., Hugo William and Fred Appenfelder. A like disposition was made of all the rest, residue and remainder of the estate, i. e., $\frac{1}{8}$ to the appellant, 17/40 to Emma C. Appenfelder and 9/40 each to Hugo William, and Fred Appenfelder. On December 8, 1927, the deceased and appellant were married, she having been divorced from her former husband in the meantime. On March 19, 1928, Charles Rudolph Appenfelder died at Cheyenne, Wyoming, being at the time a resident of Los Angeles County, California. The appellant filed a contest to the probate of the will on the ground that although married to decedent subsequent to the execution of the will no provision was made for her by marriage contract; no provision was made for her in the will; no intention was therein disclosed not to make provision for her and hence under the provisions of section 1299 of the Civil Code the will was revoked. The section referred to reads as follows: "If, after making a will, the testator marries, and the wife survives the testator, the will is revoked, unless provision has been made for her by marriage contract, or unless she is provided for in the will, or in such way mentioned therein as to show an intention not to make such provision; and no other evidence to rebut the presumption of revocation must be received." In addition to her assertion that the will was revoked by the provisions we have just quoted the appellant complains that the court erred when it permitted counsel for respondents on cross-examination to elicit from her lips the information that she was the wife of a nephew of the deceased until after the will and codicil were executed and

that she knew of no other person named Katherine Louise Appenfelder.

Turning to the first contention of appellant we quote two significant sentences from her brief which illustrate the underlying thought of her argument. She says: "Throughout all the cases it appears that there must be evidence that the testator would have the event, that is, his marriage 'in contemplation' " and "It appears to us to be the declared law of California that in order to overcome the presumption of revocation by marriage it must appear that the party named was provided for 'as a wife' or as an 'intended wife,' and that there must be language in the will indicating an intention upon the part of testator to make such a provision." The crux of the matter may then be said to be whether the quoted section of the code requires the will to provide for the individual or to provide for the person in the capacity of an intended spouse. In other words, must the will disclose that it was executed in contemplation of marriage or is the section satisfied if the person is actually provided for? We must confess that the question is most interesting and from a strictly academic basis would warrant a *résumé* of the authorities from the early English cases down to the present time. However, we are not here dealing with the doctrine of implied revocation inherited and reluctantly adopted by the common law from the ecclesiastical courts, but we are confronted with a statutory enactment relating to the revocation of wills under specified circumstances. Or as was said in *Estate of Meyer*, 44 Cal. App. 289 [186 Pac. 393], in speaking of the companion section of the code which refers to issue, "We cannot read into section 1298 any exception which the legislature did not incorporate therein." In the same case the court observed "It [the will] was revoked, not by implication, but by positive statutory enactment. . . . " It must be patent that if no exception can be read into the section, that no requirements not therein stated may be added. If the doctrine of implied revocation cannot be applied in the one case, we cannot resort to it in the other. Our problem then is wholly a question of statutory construction. The cases of *Ellis* v. *Darden*, 86 Ga. 368 [11 L. R. A. 51, 12 S. E. 652], and *Sutton* v. *Hancock*, 115 Ga. 857 [42 S. E. 214], relied upon by the appellant, are not persuasive or of assistance for the reason that the controlling section of

the code of Georgia specifically provides that the provisions of the will shall have been in contemplation of the event of marriage or birth of issue as the case may be. Nor are *Brown* v. *Scherrer,* 5 Colo. App. 255 [38 Pac. 427], and *In re Toepfer,* 12 N. M. 372 [67 L. R. A. 315, 78 Pac. 53], helpful. Both cases were decided upon the doctrine of implied revocation and in neither was the surviving spouse in any way mentioned. In fact the real question in each case was whether marriage alone, without birth of issue was sufficient, under the doctrine, to work a revocation by operation of law. On the other hand the case of *In re Adler's Estate,* 52 Wash. 543 [100 Pac. 1019], involved a statutory enactment identical in all material respects with our own, and the comments of the Washington Supreme Court concerning its interpretation are very persuasive to our minds. The court says: "It will be seen by those who are inclined to follow the cases that our statute is a wide departure from the common law as well as the theories usually advanced to sustain that rule, and that it differs from the statutes of any other state, at least in so far as they have been construed in the decisions." The premise thus laid down is in its essence the same as that established in *Estate of Meyer, supra,* from which we have already quoted. The court then goes on to say: "When the legislature has assumed to speak upon a given subject, courts must take its expression as it is; and, if it be certain in its terms, there is no reason for speculation as to its reasons or warrant for adding anything to meet a given case. The provisions of section 4598, Ballinger's Ann. Codes & St., are in the disjunctive. If [unless] a person shall have made a marriage settlement, or if [unless] the wife shall have been provided for, or if [unless] an intent not to make such provision is disclosed, the will is deemed revoked. It does not say that the provision must be made in contemplation of marriage. The only question open is whether the person who has become a proper object of the bounty of the testator is provided for. Nor will we take any concern of the amount of the provision. To bring ourselves within one of the several rules to which we have referred, we have no right to read into our statute the words unless it clearly appears,' or 'was made in contemplation of marriage.' It is conceded that parol evidence is incompetent to explain the will. This furnishes further reason to

sustain our views. Taking the statute as it is, may we not say that, presuming that the testator did not, at the time of executing the will, have in mind the changed condition to be wrought by a subsequent marriage, upon the happening of that event, being mindful of his will, he was satisfied with the provision he had made for respondent? Under the common law and statutes in form different from our own, the law presumes a testator would have made another will, but under our statute the presumption should not follow, for the person in whose behalf the law was written is provided for, and the end of the law is fully accomplished. There is nothing in the will to show a counter intent. *To hold otherwise it seems to us would be in effect to say that we should overturn this will because the legatee was not as fully provided for as in our judgment a wife should be, or has not received as much as she would have received under the statutes of descent.* (Italics ours.) If we could do that, we might, in the interest of heirs in a given case, overturn the will because the person provided for had more than enough to meet the presumed duty of the testator. Said Chancellor Kent: 'It would be dangerous, and might lead to loose speculations, to give greater effect than the settled doctrine of the English law has already done, to the occurrence of new domestic duties. Every person is permitted to make his own will, at his discretion; and he may even disinherit his children, if he should be so inclined, whether they deserved, or not, such extreme chastisement. Every material addition to the property of a testator, or alteration in the circumstances of his family, varies his relations and duties, either in kind or degree, and might be made the ground of very plausible and pathetic claims upon the court for the application of this doctrine of a presumed revocation. Courts would be running the hazard of substituting their will for that of the testator.' (*Brush* v. *Wilkins* [4 Johns. Ch. (N. Y.) 506], *supra.*)

"In thus disposing of this case, we can give effect to another most salutary rule. While we have said that in our judgment the grounds upon which wills are or may be revoked are statutory, it is also the rule that revocation of wills by implication of law are not favored. The reason for overturning a will must supplant every other consideration. Where wills have been held to be so revoked by implication,

it was because of some reason so controlling that the presumption followed that the testator himself upon the happening of the event would not have published the document as his will. There is nothing in the will before us, and nothing is suggested in the statute, that would warrant the indulgence of this presumption on our part. . . . Our conclusion then is that the words, 'or unless she be provided for in the will,' being in the disjunctive and in no way qualified by the usual term 'in contemplation of marriage,' refer to a condition existing at the time of death, and not necessarily to an intended wife. A person being provided for may, by intermarriage with the testator, bring herself within the operation of the statute. If she be provided for in the will, as she is in the case at bar, she comes within our statute, as under the rules to which we have referred she would have fallen without it. Alfred Adler having made his will, and afterwards married, his wife surviving him, at least one of three things must appear: He must have made a marriage settlement, or she must be provided for in the will, or so mentioned as to indicate his intention not to make such provision. The statute must be construed to read as follows: If after making any will the testator shall marry and the wife shall be living at the time of the death of the testator, such will shall be deemed revoked . . . unless she be provided for in the will. . . . ' Hannah Adler is provided for in the will, and is concluded by its terms.''

Had it been the intention of the legislature to say that the provision of the will should indicate that the testator had in contemplation the event of marriage it would have been a very simple process for it to have inserted a phrase to that effect after the clause ''or unless she is provided for in the will.'' For example it might have added immediately after the word ''will'' the following ''in such a manner as to indicate that the testator had in contemplation the event of marriage.'' We read the *Estate of Krutz,* 190 Cal. 146 [210 Pac. 959], as indicating the same construction of our code as we think it should bear. In that case the will contained a clause disinheriting all persons claiming to be heirs at law except those named in the instrument and giving to any person asserting any claim to the estate other than by the will the sum of one dollar. The day following the execution of the will the testator married and the Supreme Court held

that the clause "any person whomsoever, who if I died intestate would be entitled to any part of my estate" included the surviving spouse, stating that it was not necessary to mention her by name, but was sufficient to include her "in the description of a class." We think the trial court was manifestly right in holding that there was no revocation.

We now turn to the second argument of appellant, to the effect that the court erred in admitting testimony concerning the identity of the appellant. She argues that section 1299 is not concerned with the interpretation or construction of wills and further that it provides that "no other evidence (other than the will) to rebut the presumption of revocation must be received." We do not understand that the testimony was received either for the purpose of construing the will or of rebutting the presumption of revocation. It related solely to the identity of the appellant whose name was identical with that in the will, and whose name was actually in the will. It was held in *Estate of Kurtz, supra,* that evidence of an engagement at the time the will was executed was admissible for the purpose of showing "who the maker of the will intended to include by the phrase 'any person whomsoever who if I died intestate, would be entitled to any part of my estate' a phrase which, if he had not been then engaged to marry the contestant would be somewhat ambiguous, but which would be made certain by showing the fact of such engagement." So here the identity was established by showing that appellant was in fact the wife of a nephew at the time the will was published.

Order affirmed.

Works, P. J., and Craig, J., concurred.