[L. A. No. 23133. In Bank. Mar. 15, 1955.]

Estate of JOSEPH C. POISL. Deceased. EMMA POISL, Appellant, v. ROBERT L. FERGUSON, as Executor, etc., et al., Respondents.

V. P. Lucas, J. Oscar Goldstein, P. M. Barceloux, Burton J. Goldstein and Goldstein, Barceloux & Goldstein for Appellant.

Thomas W. Hughes and Michael A. Gaynes for Respondents.

CARTER, J.—On December 10, 1950, Joseph Poisl, then 69 years of age, executed a witnessed will in which he declared that he was "unmarried" and had no children. He left a business property in Chicago to his two nieces; $5,000 cash to each niece; promissory notes to two nephews; a residence in San Diego and the personal property therein to "Emmie" also known as "Emma Blackburn" residing in Alhambra; the residue to the two nephews. It also provided that, except as specified in the will, he intentionally omitted to provide for his heirs living at the time of his death.

Poisl died on June 16, 1952. The will was admitted to probate and letters testamentary issued. Emma Blackburn Poisl filed a petition to revoke the probate as to her, alleging that she and Poisl were married on July 18, 1951 (a few days more than seven months after the will was executed and about eleven months prior to his death) and were husband and wife at the time of his death.

The contest was tried by the court without a jury. The court found the foregoing facts but that provision was made for Emma under the will by reason of the legacy to her by name prior to the marriage and that hence the will was not revoked as to her under section 70 of the Probate Code.*

From the evidence it appears that Emma had known Poisl and he had lived in her house when he was in the Los Angeles area; Emma Blackburn and testator's surviving widow are the same person. The value of the property of decedent, as shown by the petition for probate of his will, was cash, $23,953.28, the San Diego property devised to Emma, worth $20,000, and promissory notes for $20,051.87. No evidence was offered on the question of whether Poisl contemplated marrying Emma when he made his will.

Applying section 70 of the Probate Code, *supra,* to the instant case, it is settled that the general disinheritance

---

*"If a person marries after making a will, and the spouse survives the maker, the will is revoked as to the spouse, unless provision has been made for the spouse by marriage contract, or unless the spouse is provided for in the will, or in such way mentioned therein as to show an intention not to make such provision; and no other evidence to rebut the presumption of revocation can be received." (Prob. Code, § 70.)

clause in the will does not constitute a mention of Emma in such a way as to show an intention not to make provision for her. (*Estate of Axcelrod*, 23 Cal.2d 761 [147 P.2d 1].) The question remains however whether provision has been made for her by reason of her being given a legacy by name.

The two recent cases decided by this court which have applied section 70 were both concerned with whether there was a sufficient mention to show disinheritance. In *Estate of Axcelrod, supra,* 23 Cal.2d 761, the general exclusionary clause of "all my heirs not specifically mentioned herein" was held insufficient to prevent revocation as to an after-acquired spouse. *Estate of Duke,* 41 Cal.2d 509 [261 P.2d 235], involved a clause in a will, in addition to the general clause in the Axcelrod case, that excluded all persons who may become the testatrix' heirs "by reason of marriage or otherwise"; that was held sufficient disinheritance to prevent revocation as to an after-acquired spouse. The reasoning of the Duke case is that, while the clause did not disinherit the spouse by name, it showed a contemplation by the executrix of a possibility of marriage in the future, and the effect that marriage would have upon the will; that is, intent to mention a future spouse and to disinherit him. Thus the Duke case is readily distinguishable from the case at bar except that it does indicate that the will must show a contemplation of a future marriage on the part of the testator to comply with the fundamental purpose of section 70, whether we are speaking of disinheritance or making provision for the after acquired spouse. In *Estate of Duke, supra,* 41 Cal.2d 509, 513, we stated: "And, although a testator need not make provision for such a spouse, he is required to bear in mind the possibility of a subsequent marriage and the serious changes in domestic relations resulting therefrom. The Supreme Court of Georgia said of a similar statute: 'The object of the provision is to secure a specific moral influence upon the testamentary act—the moral influence of having in mind a contingent event so momentous as marriage . . . , and so deserving of consideration in framing a testamentary scheme.' (*Ellis* v. *Darden,* 86 Ga. 368, 372 [12 S.E. 652, 653, 11 L.R.A. 51]; quoted with approval in *Estate of Meyer, supra,* p. 292.)" (See *Estate of Ryan,* 191 Cal. 307, 311 [216 P. 366]; *Estate of Axcelrod, supra,* 23 Cal.2d 761, 767-768; *Corker* v. *Corker,* 87 Cal. 643 [25 P. 922]; *Estate of Meyer,* 44 Cal.App. 289, 292-293 [186 P. 393].) ▮ It being necessary for the testa-

tor to have "in mind" a "momentous" occasion such as marriage, it follows that merely naming or giving a legacy to a person by name, as was done in the case at bar, with no indication that she may be a prospective spouse, is not enough to prevent revocation. ▆ That indication must appear on the face of the will, and extrinsic evidence is not admissible to show the testator's intention, at least unless there is some ambiguity. As in the Duke case a legacy to a named person alone, although the named person is later married to the testator, creates no ambiguity; it is merely "noncommittal" as were the words "heirs at law" in the Duke case. (*Estate of Duke, supra,* 41 Cal.2d 509, 515.)

There are cases in other jurisdictions with statutes similar to ours holding that contemplation of a future marriage must appear on the face of the will to prevent revocation (see cases collected 127 A.L.R. 750). In *Estate of Appenfelder,* 99 Cal.App. 330 [278 P. 473] (see also *Estate of Brannon,* 111 Cal.App. 38 [295 P. 83]) a contrary view was taken but no consideration was given to the underlying purpose and policy of section 70 as indicated by the cases heretofore cited. The last cited cases are, therefore, disapproved.

Defendants argue that the Appenfelder case having been decided when the statutory provisions preceding section 70 of the Probate Code were codified in that code, the Legislature knew thereof and thus approved the interpretation which did not require that a contemplation of marriage appear on the face of the will, and along the same line contend that the law in force—the rule in the Appenfelder case—at the time the testator made the will should be applied. Assuming but not deciding the correctness of the legal propositions inherent in those contentions, they can have no application here because the law of this state was not necessarily as stated in the Appenfelder case. This is apparent because in other cases the reasoning in the Duke case had been applied. (*Estate of Meyer,* 44 Cal.App. 289 [186 P. 393], quoting with approval the discussion in *Ellis* v. *Darden,* 86 Ga. 368 [12 S.E. 652, 11 L.R.A. 51], which in turn was quoted in the Duke case; *Estate of Ryan, supra,* 191 Cal. 307, 311; *Corker* v. *Corker, supra,* 87 Cal. 643.) While those cases dealt with the question of disinheritance as distinguished from making provision for the after-acquired spouse, there appears to be no reason why section 70 should be interpreted differently in the one situation than in the other. (See discussion 32 Cal.L.Rev. 213.) The Washington cases (*In re Steele's Estate,* 45 Wn.

2d 58 [273 P.2d 235]; *In re Adler's Estate*, 52 Wash. 539 [100 P. 1019]), relied upon by defendants, cannot be considered controlling in view of the above discussed authorities in this state.

The judgment is reversed.

Gibson, C. J., Shenk, J., Edmonds, J., Traynor, J., and Schauer, J., concurred.

SPENCE, J.—I dissent.

Section 70 of the Probate Code is clear and unambiguous. It provides, in effect, that a will executed before the marriage of a testator is not revoked by the marriage if "the spouse is provided for in the will." Emma Blackburn, now Emma Blackburn Poisl, became the spouse of the testator after the execution of the will, but the will specifically devised and bequeathed certain real and personal property to her. Therefore she was "provided for in the will," and the marriage did not effect a revocation.

Those courts which have construed provisions similar in material respects to section 70, have been unwilling to engraft additional requirements upon the clear and unambiguous language of their statutes, and therefore have held that it is sufficient that provision be made in a will for a spouse identified by her maiden name. Nothing need appear in the will indicating that at the time of its execution the testator contemplated his marriage to the named beneficiary. (*In re Steele's Estate*, 45 Wn.2d 58 [273 P.2d 235]; *In re Adler's Estate*, 52 Wash. 539 [100 P. 1019].) It was so held in a well-reasoned opinion in *Estate of Appenfelder*, 99 Cal.App. 330 [278 P. 473], and the Legislature thereafter reenacted the former section when it adopted the Probate Code.

The majority opinion would disapprove the Appenfelder case by reasoning from a supposed analogy between the situation here and that presented in certain cases involving an entirely different provision of the section. (*Estate of Duke*, 41 Cal.2d 509 [261 P.2d 235]; *Estate of Axelrod*, 23 Cal.2d 761 [147 P.2d 1].) The last-mentioned provision declares that the will is not revoked if the spouse is "in such way mentioned therein as to show an intention not to make such provision." In other words, that portion of the section deals solely with the subject of intentional disinheritance; and the last cited cases deal with situations where the spouse was neither "provided for" or "mentioned" by name in the will. There is

no analogy whatever between the two situations. In my opinion, the plain provisions of the section should be followed, and the Appenfelder case should not be disapproved.

I would affirm the judgment.

Respondents' petition for a rehearing was denied April 13, 1955. Spence, J., was of the opinion that the petition should be granted.