MARY A. INGERSOLL & another, executors, *vs.* CHARLES
W. HOPKINS & others.

Suffolk.    December 7, 8, 1897. — February 28, 1898.

Present: FIELD, C. J., ALLEN, HOLMES, KNOWLTON, MORTON, LATHROP,
& BARKER, JJ.

*Statute — Revocation of Will by Marriage.*

The meaning of St. 1892, c. 118, entitled " An Act relative to the revocation of a
will on the marriage of the testator," is that, when the will is not made in the
exercise of a power of appointment, it must be apparent on the face of the will
itself that it was made in contemplation of " such marriage," either by an ex-
press declaration in the will to that effect, or by language in the will from which
such contemplation may fairly be inferred; otherwise, a subsequent marriage
operates " as a revocation."

APPEAL, by the heirs at law and next of kin of Charles D.
Ingersoll, from a decree of the Probate Court admitting to
probate an instrument purporting to be his last will.  The case
was heard by *Knowlton*, J., who entered a decree affirming the
decree of the Probate Court, and, at the request of the appellants,
reported the case for the determination of the full court.  The
facts appear in the opinion.

The case was argued at the bar in December, 1897, and after-
wards was submitted on briefs to all the justices.

*W. H. H. Emmons & W. Bolster*, for the appellants.

*A. Hemenway*, (*E. B. Adams* with him,) for the appellees.

FIELD, C. J.   The will of Charles D. Ingersoll, of Boston, was
executed on October 20, 1891, and in it he gave all his property
to Mary Alice Payson, of said Boston, "single woman," and
appointed her one of the executors, and requested that the
executors "be required to give no sureties on their official
bonds."  It appears from the testimony admitted by the justice
who reported the case to this court, that the testator and Miss
Payson were married on October 19, 1892; that the testator
died on September 28, 1896; that prior to the time when the
will was executed the testator and Miss Payson had mutually
promised to marry each other; that the contract of marriage
remained in force from the time of the engagement until the

marriage; and that she lived with him as his wife from the time of the marriage until his death. From this evidence in connection with the will the presiding justice found, as matter of fact, so far as he properly could, that it appears from the will itself " by fair inference from its provisions as applied to the parties and the subjects to which it relates, that the will was made in contemplation of the marriage that was subsequently solemnized," and he affirmed the decree of the Probate Court allowing the will.

The question of law in this case depends upon the construction to be given to St. 1892, c. 118, of which the first section is as follows: " The marriage of any person shall act as a revocation of any will made by such person previous to such marriage, unless it shall appear from the will itself that the will was made in contemplation of such marriage, or unless and except so far as the will is made in exercise of a power of appointment and the estate thereby appointed would not, in default of appointment, pass to the persons that would have been entitled to the same if it had been the testator's own estate, and he or she had died without disposing of it by will."

It is manifest, we think, that from the will itself, considered independently of the testimony admitted by the presiding justice, it does not appear that the will was made in contemplation of marriage with Miss Payson. It is impossible to hold, in every case where a testator by his will gives property or all his property to a woman who is unmarried and makes her his executrix, that it appears from this that at the time when he made the will he contemplated marrying her and made his will in contemplation of such marriage. It does not appear that there was any dispute or uncertainty as to the Mary Alice Payson intended, or that any evidence was necessary to identify her or the estate which was devised and bequeathed to her. The evidence was admitted to show another fact existing at the time when the will was made, namely, that at that time the testator was under a contract of marriage with her, and then, by considering this fact in connection with the provisions of the will, the presiding justice drew the inference that the will was made in contemplation of the marriage with her which afterwards took place. It was in effect conceded by both sides that, although the will was

made before St. 1892, c. 118, took effect, yet, as the marriage took place after the statute took effect, the statute was applicable to the case. See *Swan* v. *Sayles*, 165 Mass. 177.

The counsel for the appellees cite the decisions of this court upon the construction of what is now Pub. Sts. c. 127, § 21, which section is as follows: " When a testator omits to provide in his will for any of his children or for the issue of a deceased child, they shall take the same share of his estate that they would have been entitled to if he had died intestate, unless they have been provided for by the testator in his lifetime, or unless it appears that the omission was intentional and not occasioned by accident or mistake." Under the statutory provision which now constitutes this section the court held that parol evidence is admissible to show that the omission by a testator to provide in his will for any of his children or for the issue of a deceased child was intentional, and was not occasioned by accident or mistake. *Converse* v. *Wales*, 4 Allen, 512. But the section does not require that it should appear from the will itself that the omission was intentional, and it well may be that the reason for using the different phraseology in St. 1892, c. 118, was that the Legislature did not intend to leave the question whether a will was made in contemplation of a marriage which subsequently took place to the uncertainty which often attends the proof of facts by oral evidence.

The counsel for the appellees also rely upon the construction which has been given to what is now Pub. Sts. c. 127, §§ 24, 25. *Fay* v. *Fay*, 1 Cush. 93. *Brimmer* v. *Sohier*, 1 Cush. 118. These sections are as follows: " Sect. 24. Every devise shall be construed to convey all the estate which the testator could lawfully devise in the lands mentioned, unless it clearly appears by the will that he intended to convey a less estate. Sect. 25. An estate, right, or interest in lands acquired by a testator, after the making of his will, shall pass thereby in like manner as if possessed by him at the time when he made his will, if such manifestly and clearly appears by the will to have been the testator's intention." The decisions are to the effect that the intention of the testator under these sections need not be declared in express terms in the will, but that it is sufficient if the intention can be clearly inferred from particular provisions of

the will, or from its general scope and import. The decisions give no sanction to the doctrine that such intention can be shown by evidence other than that derived from the will itself.

The statute in England on the subject is as follows: "And be it further enacted, That every Will made by a Man or Woman shall be revoked by his or her Marriage (except a Will made in exercise of a Power of Appointment, when the Real or Personal Estate thereby appointed would not in default of such Appointment pass to his or her Heir, Customary Heir, Executor or Administrator, or the Person entitled as his or her next of Kin, under the Statute of Distributions)." 1 Vict. c. 26, § 18. There it is held that no intention of the testator, even though expressed in the will itself, can prevent the revocation of the will by a subsequent marriage. *Otway* v. *Sadleir*, 33 L. T. 46. *In re Cadywold*, 1 Sw. & Tr. 34. Jarm. Wills, (6th ed.) 110 *et seq.* Our statute follows closely the English statute, inserting only the exception, "unless it shall appear from the will itself that the will was made in contemplation of such marriage." The intention of our Legislature apparently was not to follow the English statute as interpreted by the English courts, when it appeared from the will itself that it was made in contemplation of a marriage which subsequently took place, but to follow it in other respects, and to exclude from consideration any evidence not derived from the will itself.

The statute of Georgia more nearly resembles ours, and it is there held that parol evidence cannot be received to show that the will was made "in contemplation of the event" of marriage or the birth of a child. *Ellis* v. *Darden*, 86 Ga. 368.

In the opinion of a majority of the court, St. 1892, c. 118, means that when the will is not made in the exercise of a power of appointment, it must be apparent on the face of the will itself that the will was made in contemplation of "such marriage," either by an express declaration in the will to that effect, or by language in the will from which such contemplation may fairly be inferred, otherwise a subsequent marriage "shall act as a revocation."

A decree should be entered that the decree of the Probate Court allowing the will be reversed, and that the will be disallowed, and the case remanded to the Probate Court for further proceedings.          *Decree accordingly.*