In the Matter of the Probate of the Will of ALBERT E. CULLEY, Deceased.

Surrogate's Court, Franklin County, May 12, 1944.

*Moore, Herron & Lawler* for Charles F. Culley, petitioner.

*Clifford W. McCormick* and *F. Ferris Hewitt* for Daisy K. Culley, as executrix of Albert E. Culley, deceased, respondent.

CAREY, S. The will of the deceased was admitted to probate by a decree of this court dated September 17, 1937, upon the petition of the executrix who alleged that she was the widow of the deceased, and that he was a resident of the town of Harrietstown, county of Franklin. The petition further contained the allegation that the estimated value of the testator's real property in this State was $5,000, and the estimated value of the deceased's personal property was over $100,000.

On August 18, 1942, the petitioner herein, a brother of the deceased, instituted this proceeding to set aside his waiver in the probate proceeding and to open the decree admitting the will to probate, and asking for a decree revoking the letters testamentary issued to the respondent. It was the petitioner's contention that he had been induced to sign a waiver consenting to the probate of the will of the deceased through fraud practiced upon him by the executrix, who it was claimed told him that only she and the petitioner "had been remembered in Albert's will," and, by the fraud of her Massachusetts attorney, who it is claimed asked the petitioner to sign the waiver so that the probate might be had in New York State and thus save expense and avoid taxes. The petitioner further contended that the deceased had no domicile in New York State, but rather was domiciled at the time of his death in Fitchburg, Massachusetts. A motion was made by the respondent to dismiss this proceeding on the ground of laches and estoppel. Such motion was denied. (See opinion 179 Misc. 184.)

Under the terms of the will the respondent Daisy Culley was given the entire estate of the deceased, and it is claimed by the petitioner that the deceased was, at the time of the making of the will and at the time of his death, a resident of the Commonwealth of Massachusetts, and that by the law of said Commonwealth, the marriage of a person acts as a revocation of a will made by him previous to such marriage unless it appears from the will that it was made in contemplation thereof. The will was dated August 12, 1932, and the deceased and respondent married on October 15, 1934, and it has been conceded by the respondent that the deceased was domiciled until January 1, 1937, in Massachusetts. The question of fraud would seem to be eliminated, for the petitioner has placed no stress thereon in his memorandum, and the testimony of the petitioner practically negates any fraud.

[The Surrogate here discusses the testimony on the question of fraud. The discussion has been omitted on account of its subordinate importance.]

As stated previously, the respondent has admitted that the deceased was domiciled in Fitchburg until January 1, 1937, but she contends that during that year he changed his domicile to Saranac Lake, Franklin County, New York. Thus the question of domicile goes to the essence of the issues here involved, for if his domicile were in Massachusetts at the time of his death, the contention of the petitioner that the will was revoked by the marriage, would prevail and distribution would be as in intestacy under the laws of Massachusetts, save for the real estate located in New York State. It is the petitioner's further claim that even assuming that the deceased did change his domicile in 1937, nonetheless his marriage to the respondent acted as a revocation of the will instantly, and that the courts of New York State are bound under the provisions of section 1 of article IV of the Constitution of the United States to recognize the law of Massachusetts. Thus, there are two questions here involved, first, what was the domicile of the deceased at the time of his death, and secondly, assuming that his domicile was at Saranac Lake, Franklin County, New York State, at the time of his death, is the effect of the marriage subsequent to the making of the will governed by the law of his domicile at the time of the making of the will, or the law of his domicile at the time of his death? Considering first the question of domicile, it is to be borne in mind that concededly the deceased was domiciled in Fitchburg, Massachusetts, until January 1, 1937.

[The Surrogate here discusses the testimony on the question of domicile. The discussion has been omitted on account of its subordinate importance.]

Unquestionably, the primary reason for the deceased's going to Saranac Lake was his health, but as was stated in the case of *Matter of Newcomb* (192 N. Y. 238, 251): "Motives are immaterial, except as they indicate intention. A change of domicile may be made through caprice, whim or fancy, for business, health or pleasure, to secure a change of climate, or a change of laws, or for any reason whatever, provided there is an absolute and fixed intention to abandon one and acquire another and the acts of the person affected confirm the intention. * * * A temporary residence for a temporary purpose, with intent to return to the old home when that purpose has been accomplished, leaves the domicile unchanged, but even if the residence was begun for a temporary purpose, intention may convert it into a domicile."

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

None of the evidence offered by the petitioner is in any way inconsistent with the deceased's having changed his domicile as of April, 1937, except the payment of the poll tax on April 20, 1937 (petitioner's Exhibit No. 10) and the payment of the excise tax on his automobile paid on July 13, 1937. However, these two inconsistencies are by no means conclusive, for see *Matter of Trowbridge* (266 N. Y. 283) where the effect of declarations made to tax authorities in one State and voting therein were held not sufficient to contravert the evidence of an otherwise established domicile. On the other hand the testimony that the deceased felt better in Saranac Lake; that he intended to make it his permanent home; that he bought the first home that he ever owned; that he had retired from business; that he had spent considerable sums of money on repairs and had transferred his bank account and his securities to Saranac Lake and had engaged help on a yearly basis, point clearly to his intention to change his domicile. As stated in *Matter of Newcomb* (*supra*): " Mere change of residence although continued for a long time does not effect a change of domicile, while a change of residence even for a short time with the intention in good faith to change the domicile, has that effect." Again quoting from that case: " This discussion shows what an important and essential bearing intention has upon domicile. It is always a distinct and material fact to be established. Intention may be proved by acts and by declarations connected with acts, but it is not thus limited when it relates to mental attitude or to a subject governed by choice. As we have seen, a person may select and make his own domicile and no one may let or hinder. He may elect between his winter and summer residence and make a domicile of either." A comparison of the facts and evidence supporting his retention of Fitchburg as a domicile with those facts supporting his change of domicile to New York is such as would justify a finding in favor of the latter, for substantially all the evidence offered by the petitioner antedates the time of his expressed intention to make a change. Accordingly, it is this court's opinion that as of April, 1937, the deceased changed his domicile to Saranac Lake, Franklin County, New York.

The next question to be determined is whether the effect of his marriage to the respondent subsequent to the making of the will should be determined by the laws of his domicile at the time of his death, or at the time of making the will. It has been strenuously argued by the petitioner that under the law of the Commonwealth of Massachusetts the deceased's

marriage to respondent after making the will acted as a revocation thereof for the reason that it did not expressly state that it was made in contemplation of marriage. This is undoubtedly true under the law of Massachusetts as is indicated by the cases of *Ingersoll* v. *Hopkins* (170 Mass. 401) and *Sughrue* v. *Barlow* (233 Mass. 468), in both of which cases the person who is named in the will as a beneficiary later married the testator; but it was held that she was unable to recover for the reason that there was nothing to show that the will was made in contemplation of the marriage. The petitioner further claims, however, that the marriage acts as an immediate revocation and that since the deceased's marriage to respondent was made while he was domiciled in Massachusetts, there was no valid will in existence when he became domiciled in New York State. A will is ambulatory and wholly ineffective for any purpose until the death of its author. (*Brundage et al.* v. *Brundage et al.*, 60 N. Y. 544.) In the case *Matter of Lavine* (167 Misc. 879) it is stated that a will is an inchoate instrument and the rule is that the devolutionary effect of a will is solely determinable in accordance with the law in existence at the time of testator's death. Section 47 of the Decedent Estate Law provides as follows: " The validity and effect of a testamentary disposition of real property, situated within the state, or of an interest in real property so situated, which would descend to the heir of an intestate, and the manner in which such property or such an interest descends, where it is not disposed of by will, are regulated by the laws of the state, without regard to the residence of the decedent. Except where special provision is otherwise made by law, the validity and effect of a testamentary disposition of any other property situated within the state, and the ownership and disposition of such property, where it is not disposed of by will, are regulated by the laws of the state or country, of which the decedent was a resident, at the time of his death."

Section 24 of the Decedent Estate Law provides: " The right to have a will admitted to probate, the validity of the execution thereof, or the validity or construction of any provision contained therein, is not affected by a change of the testator's residence made since the execution of the will."

No case has been cited to show that a marriage subsequent to the making of a will acts as an immediate revocation thereof according to the law of the Commonwealth of Massachusetts. However, that is strongly argued by the petitioner citing *In Re Berger's Estate* (243 Pac. 862 [Cal.]) and it is further argued

that New York State must give full faith and credit to such interpretation and hence when the deceased changed his domicile there was no valid will in existence. Such an argument, however, does equal violence to the Constitution of the United States insofar as it affects New York State law for by section 47 of the Decedent Estate Law, hereinabove quoted, it is the statutory law of this State that the devolution of real property is governed by the laws of the situs of the real property, and inasmuch as the decedent owned real property in this State and made a will in this State while a resident of Massachusetts, to follow the contention that his marriage revoked the will would prevent the devolution of his real property in New York State according to his testamentary intention. See *Matter of Gifford* (279 N. Y. 470) wherein the court said: '' The validity and effect of a testamentary disposition of personal property situated within this State are ' regulated by the laws of the * * * country, of which the decedent was a resident at the time of his death.' * * * The disposition of *property within this State* by a person *domiciled here* is certainly regulated by the laws of this State.''

It is stated in the Restatement of the Law of Conflict of Laws (§ 250):

'' The effectiveness of an intended revocation of a will of an interest in land is determined by the law of the state where the land is.

'' *Comment:* a. Whether a will of an interest in land has been revoked, as for instance, by marriage or by the birth of a child, is determined by the law of the state where the land is.''

Likewise, section 307 of the same volume states:

'' Whether an act claimed to be a revocation of a will is effective to revoke it as a will of movables is determined by the law of the state in which the deceased was domiciled at the time of his death.

'' *Comment:* a. The rule stated in this Section is applicable although the will was made in a state other than the state in which the deceased was domiciled at the time of his death. It is also applicable although the act claimed to be a revocation of the will was performed in the state where the will was made and the testator at that time domiciled, irrespective of whether such act would be effective by the law of that state to revoke the will.

'' *Illustrations:* 2. A, domiciled in state X, executes a will and marries. A dies domiciled in state Y. By the law of Y, marriage revokes a previously executed will; by the law of X it does not. A dies intestate.''

See *Matter of White* (112 Misc. 433) where the court said: "Since the decedent was domiciled in New York, both at the time of his marriage and at the time of his death, it is unnecessary to determine whether the question of revocation by marriage is governed by the law of the testator's domicile when he dies or by the law of his domicile when he marries. The New York and Illinois decisions favor the view that it is the law of his domicile at death which controls. *Matter of Coburn,* 9 Misc. Rep. 437; *Matter of Braithwaite,* 19 Abb. N. C. 113 ".

In *Matter of Coburn* (9 Misc. 437) which was a case in which the will of the testatrix and her subsequent marriage were both made while she was domiciled in the State of New Jersey, and later moved to the State of New York where the statute provided, "A will executed by an unmarried woman shall be deemed revoked by her subsequent marriage," the court said: "The law of a decedent's domicile at the time of death governs and gives effect, or otherwise, to his will. If Mrs. Coburn had died a resident of the State of New Jersey her will would have been admitted to probate there as valid and undoubtedly such personal property as was in this state could have been administered according to the will under ancillary letters issued in this state. But it is not true, that having made her will in New Jersey while a resident there, her will should have the same effect now and here as it would have had if she had been resident there at the time of her death.

"The principles maintained in these cases go further than establishing the rule by which the domiciliary law governs the disposition of personalty; they also prove that this law overrides previously existing conditions by which a different result would have obtained.

"A will is ambulatory not only in being subject to revocation and alteration, but in being incomplete and inchoate. Before rights can be acquired under it the testator must die, and at the time of his death the will must be valid under the laws then existing. *Moultrie* v. *Hunt,* 23 N. Y. 398. And this I suppose to be true whether a change in the law has occurred by legislation or by removal to another state where different laws exist." (See, also, David's New York Law of Wills, § 403.)

It is true that no case has been found where a will made while domiciled in a foreign State and revoked by operation of law by an act occurring while so domiciled has been admitted to probate in this State upon a change of domicile hereto. However, if a will is ambulatory for one purpose, it should be for all purposes. To hold that a will validly executed in this State, because of a revocation by operation of law occurring

while domiciled in another State, is ineffectual as to real property in New York is doing violence to the law of New York State. (See Decedent Estate Law, § 47.)

The will when executed was valid in New York State; the testator died leaving real estate in New York; a will is ambulatory and speaks as of the time of death; the devolution of real property is governed by the law of the situs; regardless of domicile the will was valid to convey real property in New York State; when domicile was changed there was a valid will in New York and from that time on Massachusetts lost all dominion over the testator, and hence the disposition of his property was controlled by the law of his domicile, i. e., New York. Thus even assuming that by the law of Massachusetts the marriage consituted a revocation *eo instanti* as held by *In re Berger* (243 Pac. 862 [Cal.], *supra*), there was here throughout a will valid in New York State which, through its ambulatory characteristics, coupled the hiatus between marriage and death and the transition from domicile to domicile thus invoking not only the law of the situs but also the law of the domicile at death.

The failure of the petitioner to prove fraud on the part of the respondent, and the finding of his domicile in New York raise anew the question of estoppel and laches, particularly in view of the petitioner's waiver at the time of probate, and hence, furnish, by the delay of approximately five years, another sufficient reason for denying petitioner the relief requested. Likewise, to hold as we have gives effect to the testator's intention and benefits his widow.

Accordingly, it is this court's opinion that the deceased died while domiciled in New York State leaving a valid will duly admitted to probate, and the petitioner's application is denied.