Joseph W. Cribb, S.
In this probate proceeding two questions are presented for determination, the first involving the right of the respondent to attack the jurisdiction of this court and the second involving a finding as to the domicile of the deceased at the time of his death,
The petition for probate was filed October 18, 1962, together with an original will of the deceased, Two days prior thereto, however, on October 16, 1962, an order to search a safe-deposit *964 box of the deceased at the Rochester Savings Bank, Rochester, New York was signed by the Monroe County Surrogate based upon a petition stating that the deceased had died a resident of the City of Rochester, County of Monroe and State of New York. Pursuant to this order the safe-deposit box was searched, a will identical to the one filed in this court and purporting to be an original was found, and it was thereafter filed in the Surrogate’s office of Monroe County by an officer of the said bank.
On the return day of the citation November 19,1962, a “ Notice of Retainer and Appearance ” was filed by attorney Edward T. Malone acting for the respondent, Anna E. English, a sister of the deceased. He advised the court of the existence of what seemed to him to be a duplicate original will on file in the Monroe County Surrogate’s office. Thereafter the matter was adjourned until December 3, 1962, during which period of time this court personally went to the Monroe County Surrogate’s office and examined the application for the opening of the safe-deposit box and the will which had been filed there as a result of such search. On December 3, 1962, a short hearing was held in the matter, the court advised the respective attorneys that he had examined the file in Monroe County Surrogate’s Court, and attorney Malone requested an adjournment for two weeks to December 17, 1962, with the understanding that he would file an answer with the court and a copy with opposing counsel by December 10 and that the issues, if any be raised by the answer, should be tried December 17, 1962. On December 10, respondent’s attorney filed an answer, the first part of which reads as follows: “ The Respondent, Anna L. English, as distributee of E. Joseph Esser, deceased, appears specially for the purpose of answering the petition herein. ’ ’
It is the respondent’s contention that this court lacks jurisdiction for the probate of this will on the grounds that the deceased died a resident of Monroe County rather than Ontario County, and throughout the proceedings her attorney has denied this court’s jurisdiction even though he originally filed the said notice of retainer and appearance. On the contrary it is contended by the proponent of the will that respondent, Anna E. English is precluded from attacking the jurisdiction of the court because of the general appearance and the answer to the petition for probate.
I shall first determine this question and then move on to a statement of the domiciliary facts and a determination of that question. If we were concerned with a question of jurisdiction over the person of the respondent rather than over the subject matter, I would be inclined to agree with proponent’s contention *965 as it seems to me the filing of the notice of retainer and appearance, especially when coupled with the filing of the answer to the petition for probate, constitutes a general appearance. However, an objection to the jurisdiction of the court over the subject matter cannot be waived since jurisdiction in such a case cannot be acquired by consent or general appearance. (Matter of Turner, 195 Misc. 331.) I think it is clear that the objecting respondent, from remarks made by her counsel in open court from the outset of this proceeding together with the opening statement made in the answer filed intended at all times a special appearance to object to jurisdiction, and I shall, therefore, treat them as constituting such, and shall, therefore, deny the motion made by proponent’s attorney at the hearing held December 17, 1962, to dismiss the answer and to proceed with the probate of the will as filed.
I am not unmindful of the existence of section 44 of the Surrogate’s Court Act which states that jurisdiction, once duly exercised over any matter by a Surrogate’s Court, excludes the subsequent exercise of jurisdiction by another Surrogate’s Court over the same matter, and all its incidents. Since the Monroe County Surrogate’s Court accepted jurisdiction for the purpose of signing the order for the search of the safe-deposit box two days prior to the filing of the petition for probate in this court, it might well be argued that such court rather than this one had thereby obtained exclusive jurisdiction; however, since it might be argued that this was purely an administrative act, I shall leave that question and resolve the matter by a determination of testator’s residence at the time of his death within the purview of subdivision 1 of section 45 of the Surrogate’s Court Act.
The deceased, E. Joseph Esser, was a priest and in such capacity served as pastor of St. Patrick’s Church in Victor, New York for approximately 25 years until on or about the fourth of July, 1961, when he became pastor emeritus. As pastor he occupied a room at the head of the stairs in the rectory for many years and, after becoming pastor emeritus he was furnished a different room where he resided. At times he assisted the new priest in saying of Mass and continued to remain there in Victor, New York until sometime after Christmas, 1961, when he went to Watertown, New York, to visit friends. Early in January, 1962, while still in Watertown, he apparently suffered a stroke and was confined to the hospital in Watertown until about January 24, 1962, when he was transferred to St. Mary’s Hospital in Rochester. He remained until about February 21, 1962, when he moved to his sister’s home at 309 Maplewood Avenue, Rochester, Monroe County, New York, said sister being *966 the same person as the respondent in this matter. He resided with his sister until sometime in September, 1962, when his condition became such that it became necessary for him to enter a nursing home called “ The Chimneys ” in Rochester, Monroe County, New York, where he stayed until he was transferred to St. Mary’s Hospital on October 7, 1962, and where he died on October 8, 1962.
On January 17, 1962, Father Esser executed a power of attorney to Edward T. Malone after said Malone had been called on the telephone by Father Esser and requested to go to Water-town. Thereafter respondent’s Exhibits 3 and 4 indicate that letters were written by Mr. Malone advising the Rochester Hospital Service and the publishers of the Victor Herald of a change in Father Esser’s address to number 309 Maplewood Avenue, Rochester, New York. Testimony further reveals and is substantiated by respondent’s Exhibit 1 that Father Esser had made application to enter St. Ann’s Home, 1500 Portland Avenue, Rochester, New York and that his name was placed on the waiting list during the month of February, 1962. The home was in the process of construction and was not opened until October 15, 1962. The last paragraph of said Exhibit 1 which consists of a letter written by Marie Weidman, supervisor of the Catholic Family Center, reads as follows: “At that time were compiling the list of those persons who would be admitted when the new Home was opened. The Home was opened on October 15, 1962, but Father Esser died on October 8, 1962 and was therefore not admitted.” These arrangements were made as the testimony reveals that Father Esser definitely did not want to go to a home at Hornell, New York, but desired to stay in Monroe County where his family and friends were. Testimony of respondent, her husband, and of attorney Edward T. Malone was taken which revealed that Father Esser requested everything to be taken out of his back room upstairs at the rectory in Victor and removed to his sister’s home at 309 Maple-wood Avenue in Rochester, New York. Mr. English made several trips to get these possessions including some boxes stored in the basement, and upon one of these trips Father Esser accompanied him. The facts further reveal that he did not say Mass from the time that he was taken with the stroke until the time he died, that he did not want to go hack to Victor unless he was able to function and perform his priestly duties and that the Bishop had made the decision that he could not get any housekeeper to stay in the rectory to look after him. Father Esser’s eyesight was impaired because of his illness, and he could write his name only with difficulty. Mr. Malone’s testi *967 mony reveals that he made arrangements at the request of Father Esser to remove him from St. Mary’s Hospital to his sister’s home during the Summer where he had separate quarters and a bath with his meals being furnished by his sister and brother-in-law. Attorney Malone testified that during the month of May, 1962, Father Esser visited Doctor Fitzgerald and that there was no correctional method by which Father Esser’s eyesight could be improved. It appears that Father Esser had been to St. Ann’s Home, gone through the institution and liked it very much and felt that he would be better off at St. Ann’s rather than to be obligated to his sister and burden her with his care.
Funeral services for Father Esser were held at St. Patrick’s Church, Victor, New York, but he was buried at Holy Sepulcher Cemetery in Monroe County.
The will of decedent recited at the outset “ I, E. Joseph Esser, of Victor, Ontario County, New York”, and the power of attorney recited that he was of the Village of Victor, County of Ontario, State of New York.
“ Resident ” as used in section 45 of the Surrogate’s Court Act means “ domicile ” rather than the ordinary concept of residence. (Matter of Sawyer, 190 Misc. 659.) In order to acquire a new domicile there must be a union of residence and intention. A change of residence even for a short time with the intention in good faith to change the domicile has that effect, but there must be a present, definite and honest purpose to give up the old and take up the new place as the domicile of the person whose status is under consideration. A change of domicile may be made for purposes of health. (Matter of Newcomb, 192 N. Y. 238.) The fact that Father Esser stated in his will that he was “ of Victor, Ontario County, New York,” is not determinative of his domicile at the time of death but is rather rebuttable. (Matter of Schomer, 23 Misc 2d 282; Matter of Lydig, 191 App. Div. 117.)
It is argued by the attorney for the proponent that where there is a question of domicile as between counties and not States, ‘1 the answer rests largely on convenience of administration ” and he cites Bolton v. Schriever (135 N. Y. 65). However, in Matter of Wendel (144 Misc. 467, 470) this question of convenience and expediency is discussed, citing Bolton v. Schriever, and the court concluded that probate proceedings “ must be brought in the Surrogate’s Court of the county of the decedent’s domicile since it has exclusive jurisdiction of the estate * * * Expediency, therefore, must be disregarded and the determination of the surrogate in each case must rest *968 upon the facts and the pertinent law ”. (Matter of Lamoutte, 195 Misc. 907.)
Proponent argues that removal of a person from his or her home to a hospital is insufficient to establish “ residence ” as used in the statute and cites Matter of Hone (158 Misc. 183) and Matter of Webber (187 Misc. 674). In both of these cases, however, the deceased was incompetent and therefore unable to express or assert an intention to make the new location his or her domicile. In the case of Matter of Mark (33 N. Y. S. 2d 267, 269) cited by proponent, the court held that a removal by the decedent to a hospital did not thereby give him a new domicile and stated among other things, that the proof “is wholly devoid of decedent’s intent to remain permanently in Queens County”. In the instant case the removal with the help of and at the request of the decedent of all his possessions from the rectory in Victor, coupled with his application and apparent intent to enter St. Ann’s Home, indicate an intention on his part to abandon his old domicile and to take up a new domicile in the City of Rochester, Monroe County, New York. The intention to take up a new residence or domicile in St. Ann’s Home as expressed by the filing of the application may be taken into account, in my judgment, even though he never actually lived to physically enter the home. (Matter of Whithorne, 29 Misc 2d 27.)
I find no testimony as to where Father Esser voted, or what address he may have used in his last income tax return, if any, but feel that registration for voting or actual voting is not conclusive on the question of domicile. (Matter of Sawyer, 190 Misc. 659.) In the Sawyer case decedent, a man of advanced years, had been ill in a hospital in one county but requested his niece to take him to her home in another county to which home he removed his personal effects and in which county he kept securities in a bank. He continued to maintain a room with his niece where his personal effects were kept and to which address his mail came. The court decided that all the circumstances surrounding his mode of life were consistent with domicile in the county of his niece’s residence.
In the instant case the fact that decedent was a Catholic priest seemed relevant and might well set this case somewhat apart from the usual one in that a Catholic priest, being a celibate, has no immediate family in his home. In fact, Father Esser had no close relatives maintaining a home in Victor to which he could return once he left the hospital, whereas the average man upon retiring from his position would normally continue to reside with his wife or children in the same home town in which *969 he had been employed. Surely this fact, coupled with all the sad circumstances of his illness and subsequent decline, furnished strong reasons why he should determine to turn from Victor, New York, and acquire Rochester, New York, as his legal residence in his remaining years.
I conclude that, as a matter of fact, the decedent at the time of his death was a resident of Monroe County, New York, within the meaning of section 45 of the Surrogate’s Court Act.
Submit order on notice accordingly sustaining the jurisdiction of Monroe County Surrogate’s Court and directing the transfer of the proceedings herein as well as the original will filed in this court to the Monroe County Surrogate’s Court.