■ In the Matter of the Estate of SONIA URDANG, Also Known as SONIA KAUFMAN, Deceased. ROBERT L. KAUFMAN, Appellant; HYMAN LEHRICH et al., Respondents. [599 NYS2d 60] —In a proceeding to probate the last will and testament of Sonia Urdang, also known as Sonia Kaufman, Robert L. Kaufman appeals from an order of the Surrogate's Court, Kings County (Bloom, S.), entered May 17, 1991, which denied his motion to transfer the proceeding to the Surrogate's Court, Bronx County.

Ordered that the order is affirmed, with costs payable by the appellant personally.

The decedent Sonia Urdang, also known as Sonia Kaufman, was born in Odessa, Russia in 1898. In or about 1911, she emigrated to the United States and settled in Williamsburg, Brooklyn. Upon her marriage to the late Joseph Kaufman, she moved to 273 Beaumont Street in Manhattan Beach, Brooklyn. She lived at that address until 1989, when a series of medical problems arose, causing the decedent to shuttle back and forth between various health care institutions. She died on December 6, 1990, while a patient at Beth Israel Hospital in Manhattan. By this time the Manhattan Beach home had been sold, and prior to her final three-month-long hospitalization, the decedent had been residing in a Bronx County nursing home. At issue on this appeal is whether the decedent was, at the time of her death, a domiciliary of Brooklyn or the Bronx.

The law is well settled that an existing domicile continues until a new one is acquired. It is incumbent upon the party seeking to prove a change of domicile to demonstrate such a change by clear and convincing evidence. To meet this burden, the movant must establish the decedent's intention to effect a change of domicile from her acts, statements, and conduct *(see, Matter of Pingpank,* 134 AD2d 263, 265). "The element of intent is essential" *(Laufer v Hauge,* 140 AD2d 671, 673). The question of whether there has been a change of domicile is a mixed question of fact and law " 'and it frequently depends upon a variety of circumstances, which differ as widely as the peculiarities of individuals' " *(Matter of Brunner,* 41 NY2d 917, 918, quoting *Matter of Newcomb,* 192 NY 238, 250). "In order to acquire a new domicile there must be a union of

residence and intention" *(Matter of Newcomb,* 192 NY 238, 250, *supra).*

In this case, the record is silent as to whether the decedent intended to abandon her long-standing Brooklyn domicile. Whether she willingly entered the Hebrew Home for the Aged in the Bronx and sold her virtually lifelong Brooklyn home of her own free will remains unknown. Neither of her children's affidavits sheds any light on this question. In this regard it is generally held that an incapacitated person's admission into a health-care facility does not cause a change of domicile if the incapacitated person is unable to express an intention to establish a new domicile *(see, Matter of Esser,* 38 Misc 2d 963; *Matter of Rottenberg,* 19 Misc 2d 202; *Matter of Webber,* 187 Misc 674; *Matter of Hone,* 158 Misc 183, *affd* 250 App Div 635; *cf., Matter of Mulhall,* NYLJ, Mar. 13, 1991, at 25, col 2 [Sur Ct, Queens County]; *Matter of Culley,* 182 Misc 998). Clearly, the sale of her residence to an unrelated third party while she was institutionalized with undisclosed illnesses prevented the decedent from returning to her former residence. It did not preclude, however, health permitting, her return to the Manhattan Beach community she called home and with which she maintained strong spiritual and community ties *(see, Matter of Chrisman,* 43 AD2d 771). On the instant record, the appellant's failure to offer any evidence of the decedent's intention to establish a new domicile in the Bronx warranted the denial of his motion to transfer the probate proceedings to that county.

We have examined the appellant's remaining contentions and find them to be without merit. Lawrence, J. P., Ritter, Copertino and Santucci, JJ., concur.