OPINION OF THE COURT
William Rigler, J.
This is an unusual proceeding under the 1980 Hague Convention on Civil Aspects of International Child Abduction (19 ILM 1501, reprinted in 51 Fed Reg 10498, Appendix B) (hereinafter Hague Convention). Unusual even given the fact that the Hague Convention and its application in the United States is still relatively new. The proceeding is apparently one of first impression concerning the term "habitual residence” as used in the Hague Convention. This term is undefined in the Hague Convention as well as the Federal enabling statute, International Child Abduction Remedies Act (hereinafter ICARA) (42 USC § 11601 et seq.). What is clear is that this case involves two young children who have lived in Cleveland, Ohio, Brooklyn, New York, and the State of Israel and Brooklyn, New York again, all in less than one year. What is unusual is the fact that (1) a Hague Convention proceeding could have been brought in Israel before the children were returned to this country but it was never undertaken and (2) there has not been a determination from the requesting country (Israel) that it was the habitual residence of the children. Hence, the question of which country is the habitual residence of the children is central to this proceeding. Hence, this court must at least partially define a heretofore undefined term "habitual residence” as used in an international treaty and Federal statute.
Petitioner father, who now lives in Israel, seeks the return of two children to that country. Respondent mother lives in Brooklyn. She objects to the return. She asserts that any custody determination concerning the children should be made in the courts of the United States of America.
FACTS
The parties were married in Israel. Respondent was apparently unhappy in Israel so they moved to Cleveland, Ohio. The parties are still married to each other.
The children who are the focus of this petition are Reuven and Elisha Cohen. Reuven, the younger child, was born on March 6, 1990. Elisha was born on March 12, 1989. The children were born in Cleveland, Ohio. The children appar *1020 ently have dual citizenship. They are citizens of the United States of America as well as the State of Israel. It is conceded by the parties that until December 6, 1992 the children resided in the United States.
The parties originally resided together with the children in Cleveland, Ohio. In approximately June 1992 respondent moved with the children to New York City. The parties at that time were having marital difficulties. At some point during the summer of 1992 petitioner came to New York as well. However, he soon returned to Cleveland. Petitioner did try to visit with the children on a regular basis. Thereafter, during the fall of 1992 petitioner moved back to New York. The parties were attempting a reconciliation.
It is at this point that the parties’ view of the events diverge. The court will first set out what it views as objective facts as brought out in the trial of this matter. These facts formed the framework within which both parties presented their arguments.
In late fall petitioner purchased one-way tickets to Israel for himself and the children. The purchase was made in cash. He also sold many of his tools. On December 6, 1993 he took the children to Israel. He did not take all of the children’s clothing or belongings. In fact, for the three of them he apparently only checked a total of two bags for the flight to Israel. Tickets were not purchased for respondent.
Once in Israel petitioner enrolled the children in a daycare program. He also started working as a security guard.
In February 1993 respondent contacted the United States State Department seeking help to effectuate a return of the children. An application for the return of the children under the Hague Convention was not transmitted by the United States Central Authority to the Israeli Central Authority until April 22, 1993.
In conjunction with respondent’s actions with the State Department or in addition to her actions with the Federal authorities, respondent also sought relief in the New York State courts. On March 11, 1993 she petitioned Family Court, Kings County for an order of custody. She received a temporary order of custody at that juncture. She was not, however, able to serve it upon petitioner.
During this same period respondent was in telephone contact with petitioner and the children on a regular basis. She thus maintained contact with the children.
*1021 On May 17, 1993 respondent travelled to Israel. She lived in an absorption center. She apparently visited with the children every day. On May 28, 1993 there was an altercation between petitioner and respondent. Respondent told petitioner that she wanted to take the children for the weekend. The police were called. Respondent promised the police that she would not leave the country with the children. The children were released to her care.
Respondent immediately went to the United States Embassy to obtain new passports for the children and to obtain plane tickets for the trip back to the United States. She pledged her passport to obtain the tickets. The Embassy provided transportation to the airport. Respondent and the children boarded a plane to the United States that same day. They did make a stop-over in Italy. Respondent did not violate any existing orders from any court when she removed the children from Israel.
At no time during the children’s stay in Israel were there custody proceedings in that country. Petitioner never sought custody of the children until after the children were removed from Israel. Petitioner first sought the help of the Israeli Central Authority in mid-June 1993. The referral to the Central Authority of the United States was made on either June 18, 1993 or June 21, 1993. This proceeding was commenced in papers signed by petitioner on July 7, 1993.
Once back in the United States respondent applied for an order of protection against petitioner. That application was made in Family Court, Kings County. This Hague proceeding resulted in the proceeding in Family Court being stayed.
petitioner’s contentions
Petitioner contends that respondent wrongfully removed the children from Israel without his permission. He argues that Israel was the habitual residence of the children and thus they should be returned to that country.
Petitioner testified that in December 1992 the parties decided to move to Israel. He originally wanted to move back to Cleveland but respondent insisted on having the children go to Israel. Respondent, in fact, was the one who called petitioner’s parents who lived in Israel to arrange for money for the tickets. Respondent helped petitioner buy the tickets for himself and the children. Respondent was to follow them to Israel *1022 in a few months; once petitioner and the children were settled.
As further proof of their intention to resettle in Israel petitioner and his witness point out that he sold most of his tools of trade while in New York. He used the money to pay the parties’ debt to their landlord. Additionally, they only bought one-way tickets to Israel. He asserts that if the intention was only to have the children visit in Israel then round-trip tickets would have been purchased.
Petitioner also testified that when respondent did come to Israel he met her at the airport. She lived in an absorption center while in Israel. This, he says, proves the intent was for the family to move to Israel. Thus, the habitual residence of the children was Israel at the time that respondent improperly removed them from that country.
respondent’s contentions
Respondent’s position is easy to state: petitioner was moving to Israel but the children were only going to visit with their grandparents for a few weeks. Thus, the habitual residence of the children was always the United States of America.
Respondent testified that the parties were separated at the time that petitioner left for Israel. They had been having marital problems for a long time. Petitioner was not even sufficiently supporting the family. Respondent and the children were on welfare and the rent was never paid (this contradicts petitioner’s testimony). In fact, she was evicted.
Respondent presented witnesses who testified that petitioner bought one-way tickets because he could not afford round-trip tickets. His plan was to work in Israel for his sister to earn money for the return of the children. Furthermore, they testified that there was never a going-away party for the children.
Respondent noted that the children had always lived with her. They continued to live with her even when the parties separated with petitioner living in Cleveland and respondent living in New York City. Respondent never intended to move to Israel nor did she intend to have the children move to Israel. When the children left she only packed clothing for two or three weeks.
Respondent did admit that she called petitioner’s parents to obtain money so that the children could make the trip to Israel. She asserted that she did this because she wanted the *1023 children to meet their grandparents whom they had never seen.
The bulk of respondent’s testimony concerned her actions after the children were in Israel. When she talked to petitioner on the telephone she requested that he come back with the children. She attempted to have the State Department act on her behalf. She made applications in Family Court. Due to her lack of funds respondent was unable to obtain counsel in Israel to use the Hague Convention for her benefit. Finally, she went to Israel in order to retrieve the children. She admits that she used a ruse in Israel to obtain housing from the absorption authorities because she did not have funds for accommodations. Respondent did not reside with petitioner in Israel. Thus, indicating that there was never an intent to move to Israel as a family. Respondent also admits that she lied to the police on May 28, 1993 so that they would release the children to her.
She knew that once she had possession of the children the United States Embassy in Israel would help her return to the United States with them. She had learned from the State Department handbook "International Parental Child Abduction” that if a parent has possession of a child and the child is a United States citizen and there is no order precluding the child from leaving that particular country, the Embassy will assist that parent in removing the child from the foreign country. That is exactly what happened once she presented herself to the Embassy with the children.
ANALYSIS
As this court recently wrote:
"The purpose of the Hague Convention on the Civil Aspects of International Child Abduction is to prevent the international movement of children in custody disputes. Chapter I, Article I of the Convention reads: The objects of the present Convention are—
"(a) to secure the prompt return of children wrongfully removed to or retained in any contracting State: and
"(b) to ensure that rights of custody and of access under the law of one Contracting State are effectively respected in the other Contracting States.” (Green v Green, NYLJ, July 6, 1993, at 33, col 2.)
The analysis in a Hague Convention matter does not involve *1024 the determination of the ultimate issue of custody as between the parents. The determination only concerns the validity of the retention or removal of the subject children. The ultimate question really is: where should the issue of custody be tried if it is going to be tried?
There are two threshold hurdles that must be crossed before a petitioner may be found to be entitled to Hague Convention relief: (1) it must be shown that the petitioner had lawful rights of custody at the time of the removal or retention; and (2) it must be shown that the removal and retention is from the child’s "habitual residence.” (See, Hague Convention arts 3, 5.)
In the case at bar there is no real question that at the time of respondent’s removal of the children from Israel both parties had custodial rights as that term is used in article 5 of the Hague Convention. It is also obvious that respondent removed the children from Israel without petitioner’s permission. The question is whether these facts alone are sufficient to grant petitioner the Hague Convention relief of the return of the children to Israel. As one court has written: "Custody rights are determined by the law of the child’s habitual residence. 'Habitual residence’ is an undefined term in the Convention. It is apparent that it must be determined by the facts and circumstances presented in each particular case.” (In re Meredith v Meredith, 759 F Supp 1432, 1434.)
In the case before this court the key issue is determining the country in which the children habitually resided when they were removed from Israel. As noted in the Meredith case (supra) this is a factual determination. It really is a credibility question. The court must decide which version of the story concerning how the children travelled to Israel is to be believed.
Clearly the children habitually resided in this country prior to their trip to Israel. This status would not change unless it was changed by the parties. Using an analysis borrowed from the cases surrounding the issue of domicile (obviously very analogous to "habitual residence”), "The law is well settled that an existing domicile [substitute habitual residence] continues until a new one is acquired” (Matter of Urdang, 194 AD2d 615). The Appellate Division, Second Department, continues that it is the burden of the party seeking to show a change of domicile (habitual residence) to prove the change. In the case at bar that would be petitioner. The Second Depart *1025 ment wrote in Urdang (a probate case): "To meet this burden, the movant must establish the decedent’s intention to effect a change of domicile from her acts, statements, and conduct (see, Matter of Pingpank, 134 AD2d 263, 265). 'The element of intent is essential’ (Loufer v Hauge, 140 AD2d 671, 673). The question of whether there has been a change of domicile is a mixed question of fact and law ' "and it frequently depends upon a variety of circumstances, which differ as widely as the peculiarities of individuals” ’ (Matter of Brunner, 41 NY2d 917, 918, quoting Matter of Newcomb, 192 NY 238, 250). 'In order to acquire a new domicile there must be a union of residence and intention’ (Matter of Newcomb, 192 NY 238, 250, supra). ” (Matter of Urdang, supra, 194 AD2d, at 615-616.) The application of this analysis to the determination of habitual residence in the present case is appropriate. The only difference would be in Urdang the burden of proof was by "clear and convincing evidence” (at 615) while the petitioner’s burden of proof in a Hague Convention matter is "preponderance of the evidence” (ICARA, 42 USC § 11603 [e] [1]).
If the intent of both parties was that the children were only going for a visit to Israel then there was no intent to change their habitual residence from the United States. Therefore, petitioner would not have met one of the two requirements under the Hague Convention and he would not be entitled to relief under the treaty.
If the intent of the parties was to relocate the children to Israel, then petitioner may be entitled to relief under the Hague Convention because it would appear that the children’s habitual residence would have shifted to Israel. Petitioner would then have met the criteria to invoke the treaty. There would still exist, however, the questions as to when exactly does the habitual residence of a child change and whether one party may change their mind as to a move to another country and thereby negate an apparent change in the child’s habitual residence. This court will not need to address these latter questions.
This Hague Convention case is thus reduced to who was more credible, petitioner and his witnesses or respondent and her witnesses. The court determines after careful analysis of all the evidence presented that respondent presented the more credible position.
These parties were in the midst of marital difficulties. They had just been separated for several months. During that *1026 period respondent was the sole caretaker of the children. In fact, the children had always been under her care. It does not seem credible to this court that she would then have the children relocate to a foreign country without being with the children. There was nothing tying her to the United States at that time. Why would she stay here instead of going with her children. It makes much more sense that the children were going for a visit to Israel at the same time that petitioner was relocating to that country.
This analysis is supported by the testimony of respondent’s witnesses. There was no party to say farewell for these children; who petitioner contends were about to move permanently thousands of miles away. Petitioner did not take many of the children’s belongings with him. This suggests that they were only going for a short visit. Finally, respondent was attempting to have the children returned to United States soon after they had left. This comports with her contention that they were to be in Israel for a short period of time but were retained there by petitioner. All of respondent’s actions, even those conceded by petitioner, indicate that it was not respondent’s intention to relocate to Israel nor was it her intention to have the children relocate to that country.
The only real strength of petitioner’s position is that he only bought one-way tickets for the children and himself. This, however, is not conclusive of his position that the intent was to relocate to Israel. These are clearly not people of means. The expense of round-trip tickets would have been prohibitive for them.
Since this court determines that it was not the mutual intent of the parties to move the children to Israel and, in fact, the intent of one of the parties was merely to permit a visit to that country, the habitual residence of the children was not changed from the United States of America. Thus, Israel was not the habitual residence of the children at the time of their removal from that country. Petitioner has failed to meet one of the requirements for relief under the Hague Convention (the removal or retention is from the child’s "habitual residence”). Hence, the petition must fall.
Accordingly, pursuant to article 27 of the Hague Convention,
It is ordered that petitioner’s petition for relief under the Hague Convention is denied, and it is further
Ordered that at this juncture any questions of custody as *1027 between these two parties should be determined by the courts of New York State, and it is further
Ordered that any stays enjoining proceedings in Family Court, Kings County including that contained in the order of this court dated July 27, 1993 are vacated, and it is further
Ordered that the passports held by the court shall be released to the parties — petitioner’s to petitioner and the children’s to respondent.